Reilly v. Penn Cordage Co.

---

LEWIS A. REILLY et al.

*v.*

THE PENN CORDAGE COMPANY.

[Filed August 18th, 1899.]

In an insolvency proceeding against a corporation, in order to vest this court with jurisdiction to make a decree for the sale of the property of the insolvent company clear of prior encumbrances under the eighty-first section of the Corporation act, two jurisdictional facts must appear—first, that the prior encumbrances are disputed as to either legal or equitable rights asserted under them, and secondly, that the property is of such a character that it will materially deteriorate in value pending the litigation.

On petition of receiver for an order to sell clear of encumbrances, and petition of prior encumbrancer for leave to foreclose, &c., proofs, &c.

The defendant company has been decreed to be insolvent, a receiver has been appointed, who has qualified and entered upon the performance of his duties.

The property, which has come into his possession and ownership as receiver, consists of a lot of land near Beverly, in Burlington county, and buildings, engines, boilers, shafting, gearing and belting, and also machines on the property, there in use for the making of rope, twine and cordage.

When the property came to the receiver, it was subject to several classes of liens.

*First.* Unpaid local taxes.

*Second.* A mortgage made by the Penn Cordage Company to the Knickerbocker Trust Company of New York, on February 1st, 1896, on its face purporting to cover all the real, personal and mixed property of the mortgagor then owned, and upon all personalty thereafter to be acquired, &c., to secure bonds of the mortgagor to the amount of $100,000 with interest, &c., recorded as a real estate mortgage only, on the 10th day of April, 1896. This mortgage was neither executed, proven nor recorded as a chattel mortgage.

*Third.* A mortgage made by the Penn Cordage Company to Constantine P. Ralli, to secure its bond for $50,000 and interest, purporting to cover the company's land, improvements, franchises and income, and all real, personal and mixed property then owned by the mortgagor, recorded October 12th, 1897, as a real estate mortgage only, and assigned on October 5th, 1897, by Ralli to the Guarantor Finance Company of Philadelphia. The last-named mortgage was not executed, proven or recorded as a chattel mortgage. The debt secured by it is disputed, and when proven by the Guarantor Finance Company before the receiver was by him disallowed and rejected, and an appeal has been taken.

*Fourth.* Numerous judgments recorded and entered in the supreme court and in the Burlington county courts against the Penn Cordage Company, the earliest on the 11th day of October, 1897, and the latest on the 1st day of December, 1897. Under all these judgments levies were made upon all the property of the Penn Cordage Company previous to the appointment of the receiver.

After the receiver had for some time been managing the affairs of the insolvent company, looking to the liquidation of its debts by the disposition of its property, he instituted an inquiry as to the property of the insolvent company to ascertain what portions of it were real estate covered by the real estate mortgage, and what personal property not affixed to the freehold. Pursuing this examination, the receiver inspected the property and made a division of the personalty from the realty, by lists and

schedules, naming each piece of personal property and declaring all the remainder to be part of the realty. He then filed his petition setting forth the above-stated facts, alleging that he is advised that the said real and personal property cannot be sold subject to the liens thereon, because the bidders would not be able to determine what title they would get, or what valid lien the same might be subject to, and that for this reason both the real and personal should be held by the direction of this court, free of all liens, and the money should be paid into this court subject to distribution by the decree of this court after the validity and priority of the several liens thereon shall have been determined, and praying that his determination as to what constituted the realty and what the personalty may be ratified; that the personalty may be sold free from the liens of the judgments and executions, and the purchase-money be paid into this court, to abide its further order, and that the real estate and its appurtenances be likewise sold clear of all liens, and the purchase-money be brought into this court, and that the validity of the mortgages and claims of creditors. may be here determined and the purchase-money distributed as equity may require.

On this petition an order was allowed upon the mortgage-holders, and judgment and other creditors who had proved claims, that they show cause why the prayer of the receiver's petition should not be granted. Under this order all the parties representing each of the above-stated interests appeared and proof has been taken.

While the receiver's petition for an order to sell clear of the liens of the mortgages and levies was pending, the Knickerbocker Trust Company of New York, trustee for the first-mortgage bondholders, filed its petition in this court in this cause, showing a default in the payment of the moneys due on its mortgage, alleging that it was about to foreclose, and praying leave to make the receiver a party defendant. This petition and that of the receiver above referred to were directed to be heard at the same time, and counsel for all the parties interested consented and have been heard.

*Mr. James E. Howell,* for the receiver.

*Mr. Eugene Stevenson,* for the Knickerbocker Trust Company, first mortgagee.

*Mr. Lawrence* (of New York), for the bondholders under the Knickerbocker Trust Company.

*Mr. Joseph H. Gaskill,* for the Pennsylvania Railroad Company, judgment creditor.

*Mr. Charles V. D. Joline,* for Fries and others, judgment creditors.

*Mr. William H. Carson,* for the second mortgagee.

GREY, V. C.

These two matters, by consent of counsel and for their convenience, have been heard together.

The one, the petition of the receiver of the Penn Cordage Company, alleging that the company was at the time of the appointment of the receiver seized of both real and personal property encumbered by mortgages, judgments and executions and tax liens; that the validity and extent of the liens of the mortgagees and judgment and execution creditors is in dispute, and asking that his determination as to which of said property is realty and which personalty may be ratified and confirmed, and that the property so designated as realty and personalty may be separately sold, each free from the lien aforesaid, and the purchase-money may be brought into court to be distributed among the parties entitled thereto, as justice and equity may require.

The other matter presented is the petition of the Knickerbocker Trust Company of New York, trustee mortgagee, holding a mortgage which, upon its face, appears to be a lien upon all the real and personal property of the insolvent company, but which has not been recorded in the place of record of a chattel

.mortgage, according to the directions of the Chattel Mortgage -statute. The Knickerbocker Trust Company prays that it may .be permitted to foreclose the mortgage against the receiver, .making him a party defendant in its proposed suit.

The receiver contends that the situation of the property of the .insolvent corporation is such that he may rightfully invite this .court to make order that he may sell all the property of the in- -solvent corporation, clear of encumbrances, for the best price ·that can be obtained, and pay the proceeds thereof into this .court, to be disposed of as the rights of the parties in interest may require.

The only authority of this court in case of an insolvent cor- poration to order such a sale, clear of liens and encumbrances .charged upon the property before jurisdiction over it was .assumed by this court, is conferred by section 81 of the General ·Corporation act. *P. L. of 1896 p. 303.* The court of appeals ·has declared, in the case of *Randolph* v. *Larned, 12 C. E. Gr. .560,* that the power of this court to order such a sale, clear of prior encumbrances, depends upon the existence of the two pre-' requisites specified in that statute—first, the legality of the prior liens must be brought in question, and secondly, the property must be of a character materially to deteriorate in value pend- ·ing the litigation. The court declared that the statute should ·receive a liberal construction, and that the dispute bringing into .,question the legality of the liens was not to be limited to an objection to the validity of the mortgage itself, but might exist ·by reason of disputes touching the extent of the lien created by ·it, its relative priority to other encumbrances, or other equities raising substantial differences between the parties, the effect of ·which might lead to extended litigation. If these conditions do not exist, the mischief which the statute is intended to correct ·does not threaten, and the remedy which the statute applies is not needed.

The legislature did not intend that this statute should be used as an excuse to deprive preceding encumbrancers of their right .(subject to such order of this court as might preserve the prop- .erty taken into its custody) to use by foreclosure or other pro-

ceedings the remedies which secured them by their contracts the power to take the initiative steps, and to control the time, place and circumstances when, where and under which the property mortgaged should be disposed of. This privilege, in many cases, may have had a great influence in inducing the making of the contract, and may have added largely to the value of the mortgage security as an investment. It is only when the two jurisdictional facts of disputed prior encumbrances, and probability of deterioration in value of the property, both exist, that this court is justified in depriving the holder of the prior encumbrance of his right to enforce at his option, the remedy secured him by his contract.

Proceeding to inquire whether the present application of the receiver shows the existence of these two conditions, it is alleged that the legality of the prior mortgage, held by the Knickerbocker Trust Company, is brought in question. The legality of that mortgage as a duly-executed encumbrance, made in good faith and duly recorded as a real estate mortgage, is not attacked. The grounds on which it is questioned are, first, that this mortgage appears, by its words of conveyance and its description of property, to be an encumbrance not only on the real estate but also on the personal property of the insolvent company, when in fact it lacks all the statutory requisites of a chattel mortgage. To this it is well answered that this mortgage also shows on its face that it was not recorded as a chattel mortgage, in accordance with the requirements of the Chattel Mortgage acts, and that no claim whatever is made under it as a chattel mortgage; in short, that its invalidity as a chattel mortgage is too plain to be made even the subject of disputation. It is claimed, secondly, that, taking this mortgage to be only a real estate mortgage, yet the extent of its lien upon the property of the insolvent company is brought into question because the trustee mortgagee and the receiver and the creditors are in dispute whether a number of articles, claimed by the receiver and creditors to be personal property and not subject to the lien of the trust mortgage, are in fact real estate and included in the lien of that mortgage. The court of appeals in

*Randolph* v. *Larned, ubi supra,* declared that in ascertaining the first jurisdictional fact—whether the legality of the prior encumbrance was brought in question—the court should not limit itself to an ascertainment whether there was a dispute concerning only legal objections to the validity of the prior mortgage, but should exercise the remedies of the act as well where the questions of dispute related to differences touching equitable rights, and used as instances questions concerning the extent of the lien created by the prior mortgage and its relative priority as to other encumbrances. That in this matter the extent of the lien of the Knickerbocker Trust Company mortgage is brought in question is plainly apparent on the face of the petition of the receiver, the answer of that company, and is also shown in the proofs.

That the legality of the second mortgage, made by the insolvent company to Constantine Ralli, is brought in question is also exhibited whenever, in these insolvent proceedings, that mortgage is referred to, as it is alleged by all subsequently interested that it was neither made nor used in good faith, and a claim under it, filed with the receiver, has by him been rejected, and an appeal from his rejection has been taken.

So far as the existence of the first jurisdictional fact—the bringing in question the legality of the prior encumbrances—is involved, it appears to be sufficiently established.

The second condition of fact necessary to the exercise of this statutory jurisdiction is that the property must be of a character materially to deteriorate in value pending the litigation. The existence of this second condition is just as essential to the use of this remedy as is the establishment of the first. Both are necessary pre-requisites to the exercise of the power. *Randolph* v. *Larned, ubi supra.*

There is no allegation in any proceeding in this cause that the property in question is of a character materially to deteriorate in value pending the litigation. There is no evidence offered to show the existence of such a condition. This court cannot ignore the fact that it has, on the application of the receiver, made several orders in this insolvent proceeding for the conduct

30

of the business of the insolvent company, showing that its property is in present producing use for the purposes for which it was designed, and the trend of the testimony goes to show that there is no likelihood that within a period necessary for the foreclosure and judicial settlement of all the disputes and final realization upon the prior mortgage to the Knickerbocker Trust Company, the property would be subject to material deterioration in value.

In the absence of a showing that both the conditions exist which are prescribed by the statute, and declared by the court of appeals to be pre-requisites to the exercise of the power, the application of the receiver seeking an order for sale of the property of the insolvent company, clear of prior encumbrances, under the power given by the eighty-first section of the Corporation act, must be refused, and the holders of those securities must be permitted to obtain their remedies by proceeding with a foreclosure.

When such a bill is filed by the Knickerbocker Trust Company, first mortgagee, it must necessarily (in view of the presently-existing disputes as to what portion of the property of the insolvent company is real estate and what personal) present for determination the claims of the mortgagees in such shape that all subsequent claimants will have, on a proper issue made, the opportunity to assert their rights and to have them once for all authoritatively determined. Such litigation in all probability will not be extended. This renders it unnecessary to consider the questions raised by the voluntary determination of the receiver as to what articles constitute part of the realty and what part of the personalty.

The proceedings in this cause indicate with considerable significance that the total value of the mortgaged real estate when realized by a sale will not equal the amount admitted to be due the Knickerbocker Trust Company on its first mortgage. It is not the purpose of the statute giving to this court the power to seize the property of insolvent companies and administer it (nor should it be the policy of this court) to take from prior mortgagees the disposal of the property of the insolvent company,

where its value is, with relation to the prior mortgage, so little that in all probability nothing will be realized for the benefit of any creditor other than the prior mortgagees. In such cases the risk, trouble and expense of sale should be borne by that class of creditors which, by reason of its express contract and advantageous position, will take all the benefit of the realization. There is no occasion for this court to prevent or to aid action by the prior mortgagees in such cases, because they have their remedy by their express contract. The unsecured creditors for whom the receiver should especially care would receive no benefit if the sale were made by him.

The prayer of the receiver's petition should be refused. The trust company should be permitted to make the receiver a party defendant to its foreclosure bill.