[No. 2841, Aug. 25, 1924.]

GRAFE v. DELGADO, Sheriff.

SYLLABUS BY THE COURT

1. Under the rule of construction—ejusdem generis—general words in a statute which follow a designation or enumeration of particular subjects, objects, things, or classes of persons, will ordinarily be presumed to embrace like things or persons with those specified.

2. All of the games enumerated and specified in section 1, c. 86, Laws 1921, are not necessarily and essentially "banking" or "percentage" games, so that the general words following such designated list cannot be restricted to include games of that kind only.

3. The game of solo, being played with cards for something of value, is made an offense by the general language embraced in said statute.

Appeal from District Court, Santa Fé County; Holloman, Judge.

Habeas corpus by Sam Grafe against Tomas Delgado, as Sheriff of Santa Fé County. The application was denied, and petitioner remanded, and he appeals. Affirmed.

R. P. Barnes, of Albuquerque, for appellant.

M. J. Helmick, Atty. Gen., and J. J. Kenney, Asst. Dist. Atty., of Santa Fé, for appellee.

OPINION OF THE COURT.

BRATTON, J. An information was filed in the district court of Santa Fé county, charging appellant with violation of section 1, c. 86, Laws 1921, by playing a game of solo. A warrant was issued upon which the sheriff of Santa Fé county took him into custody. This proceeding in habeas corpus was immediately in-stituted. The cause was submitted to the lower court upon an agreed statement of facts, as follows:

"That solo is a game played wtih cards, in which at least two and not more than four persons can play; that as played by petitioner, the game consisted of four players, each having one hundred and twenty markers, which

represented nothing of value, but merely served to keep the record of the state of the game between the players; that the cards were dealt by one of the players alternately to the other players in the game, and each hand was played until one of the players had lost the markers given him when the game began; that the result of the play depended upon the chance of the cards, as well as upon the skill of the players; that each of the players at said game received from the proprietor of the premises in which the game was played, a trade check of the value of twelve and one-half cents (12½ c) in trade, or a cigar, or a soft drink, and the loser at said game of solo paid for each and all of the said trade checks, cigars, or soft drinks so given or distributed at said game; that such trade check, cigar, or drink is a thing of value, but that no bet, stake, money, or thing of value, other than as stated, was permitted or passed between the players; that no fund or money or bank of credit, or other thing of value is furnished by the proprietor, other than as heretofore stated, of the place where the game was played for starting or continuing the game, or by the petitioner, or by any of the players who participated in the game, and that the drinks sold are what are known as 'soft drinks,' which are not sold in violation of any law."

The application was denied, and the petitioner remanded to the custody of the sheriff. The case is here on appeal.

1. The statute, which it is claimed was violated (chapter 86, § 1, Laws 1921), is in the following language:

"It shall hereafter be unlawful to play at, run or operate any games of chance such as keno, faro, monte, passfore, passmonte, twenty-one, roulette, chuck-a-luck, hazard, fan tan, poker, stud poker, red and black, high and low, craps, blackjack or any other game or games of chance played with dice, cards, punch boards, slot machines or any other gaming device by whatsoever name known, for money or anything of value, in the state of New Mexico."

Appellant's contention is that solo is not one of the enumerated games denounced by the statute, and that it does not fall within the general language, "or any other game or games of chance played with dice, cards, punch boards, slot machines or any other gaming device by whatsoever name known, for money or anything of value, in the state of New Mexico," because such general language follows a list of enumerated

games, all of which are "banking" or "percentage" games, and consequently, the general language embraces only games of that character, and that this is not that kind of a game.

[1]  The well known and universally recognized rule of statutory construction; ejusdem generis—is, that general words in a statute, which follow a designation or enumeration of particular subjects, objects, things, or classes of persons, will ordinarily be presumed to be restricted so as to embrace only subjects, objects, things, or classes of the same general character, sort or kind, to the exclusion of all others. This is merely a rule of construction, and, like all other rules, is resorted to merely as an aid to ascertain the legislative intent. It arists from the presumtion that, having enumerated a list of things or persons, the Legislature must have had in mind no other kind. 25 R. C. L. "Statutes," § 240; 2 Lewis, Suth. Stat. Constr. § 422; State ex rel, Beach v. Board Loan Commissioners, 19 N. M. 266, 142 Pac. 152; State v. Collins, 28 N. M. 230, 210 Pac. 569.

[2]  The entire statute (chapter 86, Laws 1921) is complete and very comprehensive. It was intended to avoid the evils flowing from gambling. It makes those who play, as well as those who operate or conduct a game, liable. It also prescribes a penalty for those who allow their premises to be used for such purposes. It is made the duty of district attorneys and the Attorney General to institute and prosecute causes to close up places habitually used or resorted to for such purposes, and gives to the district courts power to close them. It is made the duty of the several district courts to specifically charge the grand jury concerning the provisions of the law, and it goes to the extreme of requiring that all equipment, paraphernalia, or devices used at gambling houses be destroyed. With this broad and comprehensive scope of the act, appellant cannot escape its general language now under consideration, unless his contention with reference to

its proper construction and interpretation is well founded. The entire argument, however, is founded upon an erroneous premise. It proceeds upon the assumption that each and all of the games specifically named in the statute are "banking"' or "percentage" games and that, consequently, the general language embraces nothing but games of like kind and class. In this he is wrong, and his premise being erroneous, the entire argument builded thereon is without merit. For instance, poker, stud poker, and craps are in the list of specified games. While we admit with great frankness that we are not experts in the art or science of gambling, and that it may have depths to which we have not gone and concerning which we have no personal knowledge, yet we think it will not be seriously contended that poker, stud poker, and craps are necessarily and essentially "banking" or "percentage" games. To the contrary, perhaps, a majority of these games have no "banking" or "percentage" elements. This being true, we cannot say, by adopting the rule of construction contended for, that the Legislature intended to include in the statute nothing but "banking" or "percentage" games.

[3] The game in question is covered by the general language of the law. It is one played with cards. It is played for something of value in this way—at the outset the proprietor of the premises gives to each player a trade check of the trade value of 12½ cents, with which cigars or soft drinks are paid for. The loser at the game pays for all of these checks, and each winner receives cigars or soft drinks, or their equivalent, without paying for them. These are the winnings of the game. So the general language of the law was intended to cover just such devices, and it fits this offense like a well-tailored suit.

The judgment of the lower court was correct, and should be affirmed; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.