[Nos. 3293, 3310.   April 4, 1930.]

MAXWELL LUMBER CO. et al. v. CONNELLY et al.
(COLUMBIA TRUST CO., Intervener).

[287 Pac. 64.]

Fred S. Merriau, of Raton, for appellants Maxwell Lumber Co., and Springer Lumber Co.

Pershing, Nye, Tallmadge & Bosworth, of Denver, Colo., and Daniel K. Sadler, of Raton, for appellant Mine & Smelter Supply Co.

Henry Hunter, of Trinidad, Colo., and J. Leahy, of Raton, for appellant Trinidad Brick & Tile Co.

Daniel K. Sadler, of Raton, for appellants Thomas B. Sasse and Continental Tie & Lumber Co.

George E. Remley, of Raton, for cross-appellant Columbia Trust Co.

Crampton & Darden and G. W. Robertson, all of Raton, for appellee James J. Connelly.

ON MOTION FOR REHEARING

SIMMS, J.

After argument on motions for rehearing, we have concluded that the result reached in the original opinion is sound and that the motions should be overruled. But we have thought it advisable to withdraw the original opinion, in place of which the following will be filed:

This is a statutory proceeding for injunction and receiver to wind up an insolvent corporation under sections 954 et seq., Code 1915 (Comp. 1929, 32—174 to 32—194).

The appellants, who are creditors holding liens, have appealed from so much of the final decree as adversely affected them in the matter of costs and expenses of administration, and the Columbia Trust Company, as trustee under a deed of trust and mortgage securing a bond issue of the insolvent corporation, has likewise appealed from so much of the judgment as awarded the Mine & Smelter Supply Company's mechanic's lien claim priority over the deed of trust of Columbia Trust Company, and from so much of the decree as denied to the Columbia Trust Company a first lien on certain assets in the receiver's hands. The causes have been consolidated for the purpose of the appeals.

In the spring of 1924, Midwest Sugar Company started to build a beet sugar factory at Maxwell. While construction was in progress, a bond issue of $125,000 was authorized, dated June 1, 1924, and secured by a deed of trust and mortgage to Columbia Trust Company as trustee, which was recorded June 20, 1924. The factory was practically completed by fall and after running for two or three weeks suspended for lack of funds. On December 18th, the president of the corporation, as a stockholder, filed suit for injunction and receiver under the statute, and on the same day the corporation answered, admitting insolvency and all other facts charged in the complaint, and a receiver was appointed and qualified at once. There was a small amount of cash on hand, together with certain coal, sacks, a few bags of sugar, and certain other assets, such as by-products, accounts, and claims. These the receiver took in charge and immediately proceeded with his duties. He insured the buildings and machinery, placed a watchman in charge, collected such accounts and choses as could be converted into money, and in general went about the ordinary work of such a receivership. Later, certain lien claimants undertook to bring independent action of foreclosure, all of which were stayed by court orders, and all claimants were directed to present their claims in the receivership case. This they did. The court directed the receiver to sell the assets of the insolvent corporation, free of liens, and, for the purposes of proper marshaling, divided the assets into five groups, as follows:

Asset No. 1. The sugar factory, equipment and machinery, with 40 acres of land at Maxwell.

Asset No. 2. The beet dump at Springer.

Asset No. 3. The beet dump at Rayado.

Asset No. 4. Certain personal property.

Asset No. 5. The sum of $11,650.19 derived from cash on hand, sugar, coal, by-products, and choses collected by the receiver.

The expenses of the receivership were $12,024.63. This included receiver's fee, allowances for his counsel, taxes, insurance, watchman and other help, publication bills, labor claims, and general expenses of every nature. Asset No. 5 was not quite sufficient to defray the entire expense. The court permitted the receiver to use the fund from time to time and of this the Columbia Trust Company, trustee, is the only creditor complaining. We will notice that phase of the matter later.

The receiver's sale was duly made and, after confirmation, the court directed the receiver to charge against the proceeds (treating asset No. 5 as sold) the following cost deductions, apportioned to each asset as the court determined that asset had been benefited by the receivership, as follows:

| Asset No. | Sold for | Cost apportioned |
|---|---|---|
| 1 | $24,671.49 | $ 7,816.20 |
| 2 | 800.00 | 253.45 |
| 3 | 275.00 | 87.13 |
| 4 | 558.53 | 176.95 |
| 5 (cash) | 11,650.19 | 3,690.90 |
| | | $12,024.63 |

Appellants are lien claimants against asset No. 1. The total of their claims as allowed by the court was $24,671.-49. They procured a bidder who purchased the asset for that exact sum. Asset No. 5, being the general fund of the receivership, is the only fund to which the large number of unsecured general creditors could look. Appellants contend that by forcing them to defray the largest part of the cost of the entire proceeding, the trial court re-

established asset No. 5 to a great extent for the benefit of general creditors and thus erred against appellants. They say they did not initiate the receivership proceeding and came into it only because they were ordered to do so, and they claim that the general fund of the receivership, upon which there were no liens (asset No. 5), should be first exhausted in paying expenses before they (appellants) could be forced to contribute anything out of their security for that purpose. The receiver contends that all persons who deal with a corporation in this state must take notice of the possibility of insolvency proceedings and of the law of costs applicable thereto, and contends that the receiver rendered service which protected and benefited appellants' security, and they should pay their just share of that expense. All parties claim the question is one of statute but differ as to the construction thereof.

Sections 971, 975, and 976, Code 1915 (Comp. 1929, 32—189, 193 and 194), read as follows:

"§ 971. Where property of an insolvent corporation is at the time of the appointment of a receiver incumbered with mortgages or other liens, the legality of which is brought in question, and the property is of a character materially to deteriorate in value pending the litigation, the district court may order the receiver to sell the same, clear of incumbrances, at public or private sale, for the best price that can be obtained, and pay the money into the court, there to remain subject to the same liens and equities of all parties in interest as was the property before sale, to be disposed of as the court shall direct."

"§ 975. Before distribution of the assets of an insolvent corporation among the creditors or stockholders the district court shall allow a reasonable compensation to the receiver for his services and the costs and expenses of the administration of his trust, and the costs of the proceedings in said court, to be first paid out of said assets."

"§ 976. After payment of all allowances, expenses and costs, and the satisfaction of all special and general liens upon the funds of the corporation to the extent of their lawful priority, the creditors shall be paid proportionally to the amount of their respective debts, excepting mortgage and judgment creditors when the judgment has not been by confession for the purpose of preferring creditors; and the creditors shall be entitled to distribution on debts not due, making in such case a rebate of interest, when interest is not accruing on the same; and the surplus funds, if any, after payment of the creditors and the costs, expenses and allowances aforesaid, and the preferred stockholders, shall be divided and paid to the general stockholders proportionally, according to their respective shares."

It is conceded by counsel for all parties here that the sections quoted were taken from New Jersey. Sacramento Valley Co. v. Lee, 15 N. M. 567, 133 P. 834; Parsons Mining Co. v. McClure, 17 N. M. 694, 133 P. 1063. The statutory proceeding by injunction and receiver to wind up an insolvent corporation has for its principal object the termination of the corporation's existence as a matter of protection to the public and the stockholders. It is in the nature of a quo warranto proceeding. The question of administering and distributing its assets is purely incidental and arises out of the necessities of the case. Parsons Mining Co. v. McClure, supra. The proceedings can be maintained even where all the corporate assets are in possession of another court for administration. Gallagher v. Asphalt Co. of America, 65 N. J. Eq. 258, 55 A. 259.

Coming now to a construction of section 971, we find therein the only power which the trial court had to order a sale of assets free of liens. It must appear that the legality of the liens claimed are in dispute *and* that the property is of such a nature that it will deteriorate pending the litigation. Both of these elements must concur; one of them alone does not authorize a sale free of liens. Reilly v. Penn Cordage Co., 58 N. J. Eq. 459, 44 A. 161. Where the statute does not authorize a sale free of liens, the receiver has no other course left but to sell subject to the liens, or, if there is no hope of realizing anything for the estate's equity, he should demand that the lien claimants take the property over under permission from the court, and proceed in their own way to satisfy their liens. A long and expensive administration of property in which there is no equity is not intended by the statute and, where permitted, should not be at the expense of the secured creditors unless they consent thereto.

In the present case, the lien claimants are not disputing the receiver's right to charge so much of the expenses as are in excess of his available general fund against the proceeds of the sale of their security. We are thus spared the necessity of deciding whether any such charge could lawfully be made under the circumstances which appear in this record.

In the present case, section 975 gives no trouble. All parties agree that the expenses should be paid first. It happens in this particular instance that there are funds enough to practically pay them, which funds are not covered by any lien. But when we come to section 976, the phrase "to the extent of their lawful priority" is the subject of dispute. The receiver contends that the proper construction is to hold that their lawful priority extends only to the fund *after it has contributed* an equitable share of the cost of the receivership. This was evidently the view of the trial court. We hold that it is erroneous. The receiver paid all claims for labor, which are given a first and prior lien by section 974, Code of 1915, without requiring such lien claimants to prorate any expenses whatever. These labor claims were no more liens than were those of materialmen and mechanics. True they were prior, but the statute (section 976) provides for both general and special liens and recognizes that they may have a successive order of priority. It directs that they shall be paid "to the extent of their lawful priority." This simply means that they have a superior right to payment in full over the right of general unsecured creditors to share in a dividend. The New Jersey court has so held in Lyle v. Staten Island Terra Cotta Lumber Co., 62 N. J. Eq. 797, 48 A. 783. That case involved labor claims which were prior liens under the New Jersey statute, as under our own copied from it. The use of the term "preferred" creditors is synonymous with "lien" creditors, as used in that opinion.

Counsel for the receiver have cited many cases from New Jersey which we have examined, but we do not find any other case than the Lyle Case, supra, which directly adjudicates the question. We find decisions holding that where the lien claimants initiate the proceedings and there is no general fund, the court must of necessity charge the expenses against the proceeds of the security. And where there is no equity to be administred for general creditors and such fact is apparent from the start, even if the action is in statutory form and commenced by stockholders or creditors, it is a "dry receivership," and those who commence it may properly be required to give

security for the costs and expenses, rather than attempt to charge them against the lienholders. Lembeck v. Jarvis Terminal Cold Storage Co., 68 N. J. Eq. 352, 59 A 565.

We conclude that where there are general funds derived from liquidation of assets not incumbered with liens, the receiver of an insolvent corporation, in a suit of this kind, must use those funds and exhaust them before attempting to prorate expenses among the lienholders.

■ The next question is one relating to the claim of the cross-appellant Columbia Trust Company, trustee, under the bond mortgage, to a lien upon the funds which make up asset No. 5, supra. The pertinent provisions of the mortgage are as follows:

"* * * the Midwest Sugar Company aforesaid, does by these presents grant, bargain, sell, convey, confirm, mortgage, warrant, assign and set over unto the Columbia Trust Company, Trustee, and to its successors and assigns forever, in trust nevertheless for the purposes herein specified, all of the land and real estate of the company within the County of Colfax and State of New Mexico, with the appurtenances and all buildings, fences, improvements, structures and fixtures thereon or appertaining thereto, and all *goods, chattels, wares, merchandise, machinery, equipment, appliances, tools, railway tracks, tramways, railroad or tram cars, engines, livestock, implements, and every other character or kind of equipment or chattels whatsoever, now or hereafter used in the operation of said property in the County of Colfax and State of New Mexico, and all the rents and issues thereof. * * * It being the intention that this mortgage or deed of trust shall include and cover, as security hereunder, any and all property of every kind and character, real, personal or mixed, now held and owned or hereafter acquired by the said Company in the County of Colfax and State of New Mexico.*"

Sections 5 and 20 of the mortgage or deed of trust are also pertinent, and are as follows:

"*Sec. 5. Until default shall be made in* the payment of the principal or interest of said bonds, or of some one or more of them, according to the tenor thereof and of the coupons thereto annexed, or in the performance or observance of some covenant, condition, obligation or requirement imposed upon the Company by said bond or by this instrument, *the said Company shall be suffered to manage, operate and enjoy all the property, rights and privileges conveyed hereby and to receive and enjoy the income, revenues, rents, issues and profits thereof.*"

"*Sec. 20.* The written consent of the Trustee shall be a prerequisite to any and every sale or disposition of any of the property covered by this indenture, but with such consent, the sale or exchange of said property may be made, provided the same shall be

replaced by other property of substantially similar character, and of equal or greater value, and provided further that the same shall be placed under the lien of this instrument without any other or prior lien attached thereto."

It may well be doubted that the granting portion of the instrument quoted above, standing alone, covered or was intended to cover money in bank, accounts receivable, sugar manufactured for sale, or other property not necessarily a part of the sugar factory and its equipment. When we take sections 5 and 20 into consideration, it becomes evident that the last sentence of the language used in making the grant was not intended to be applied to property not pertaining to the factory and equipment for manufacturing sugar. If we were to construe section 20 literally, we would find the Midwest Sugar Company agreeing to replace sugar sold with sugar bought; to replace every dollar spent with another dollar. Manifestly, no factory could run or operate a day under such terms. We cannot believe that the provisions of the mortgage were drawn so as to prevent the accomplishment of the purpose to be served thereby. We think this case is one for the application of the doctrine of "ejusdem generis" and that, after enumerating the specific real and personal property to be covered by the mortgage, the words

*"It being the intention that this mortgage or deed of trust shall include and cover, as security hereunder, any and all property of every kind and character, real, personal or mixed, now held and owned or hereafter acquired by the said company in the County of Colfax"*

should be construed and held to mean

"Of like kind and character as that heretofore specifically enumerated."

Grafe v. Delgado, 30 N. M. 150, 228 P. 601; 3 Fletcher's Cyclopedia on Corporations, § 1285; Morgan Bros. v. Dayton Coal & Iron Co., 134 Tenn. 228, 183 S. W. 1028, Ann. Cas. 1917E, 42; 13 Corpus Juris, p. 537. We find no error in the ruling of the lower court holding that asset No. 5 was not covered by the Columbia Trust Company's mortgage.

The only remaining question is whether or not the lien claim of the Mine & Smelter Supply Company of

Denver was superior to the lien of the Columbia Trust Company's chattel mortgage recorded June 20, 1924. Section 3322, Code of 1915, reads as follows (Comp. 1929, 82—205):

"The liens provided for in this article are preferred to any lien, mortgage or other incumbrance which may have attached subsequent to the time when the building, improvement or structure was commenced, work done, or materials were commenced to be furnished; also to any lien, mortgage, or other incumbrance of which the lien holder had no notice, and which was unrecorded at the time the building, improvement or structure was commenced, work done, or the materials were commenced to be furnished."

The foregoing statute contemplates that there shall be a continuing contract between the materialman and the purchaser, either in express terms or by implication, and in the absence of such a contract, separate orders give rise to separate lien rights and cannot be tacked together. In Jones on Liens (2d Ed.) par. 1435, that author states the rule to be:

"*Sec. 1435. Materials Furnished on Running Account.*—The more difficult questions arise where work is done or materials are furnished without any specific agreement, but as the same are required, and are connected only as they form parts of a connected whole in the building or improvement for which they are furnished. If a materialman begins to furnish materials for the erection or repair of a building without any specific agreement as to the amount to be furnished, or the time within which they are to be furnished, but there is a reasonable expectation that further material will be required of him, and he is afterwards called upon from time to time to furnish the same, he is generally entitled to a lien as under an entire contract. In determining a particular case, the character of the account, the time within which the work was done or the materials furnished, and the purpose in doing the work or furnishing the materials, afford a proper ground for the presumption either that there was or was not an understanding from the commencement that the work should be done or the materials should be furnished whenever required. If the work was done or the materials furnished for separate and distinct purposes, or under distinct contracts or orders, though in executing one and the same contract with the owner, there is no presumption of a continuous account, and the right of lien must date from the time of doing the different jobs of work, or furnishing the different parcels of materials. But if there was a continuous dealing and running account, and the work was done and the materials furnished at short intervals, and were appropriate to the condition and progress of the building, a presumption arises that it was understood from the beginning that the claimants were to do the work or furnish the materials for the construction of the building as the same should be required; and in such case the last item of the account is the date from which the limitation of the time of filing of the lien is to be taken."

The Columbia Trust Company contends that the arrangement under which the materials were furnished by Mine & Smelter Supply Company to the Midwest Sugar Company was not pursuant to a continuing contract, but was a series of isolated transactions into which the parties were each free to enter or not, as they chose; that all orders made for lienable material, prior to the date of recording the mortgage, had been received, used, and paid for before the chattel mortgage went to record; and that a lien claimant cannot reach back and tack together, so to speak, his dealings which are in fact separate ones, for the purpose of creating afterwards the semblance of a continuing contract for the furnishing of supplies and materials over the whole course of construction.

There is little or no dispute between the parties as to the correct statement of the law in the abstract. As usual, it is the application of it to the particular case which gives rise to differences of opinion. Just what the parties intended to do, whether to arrange for furnishing materials over the whole course of construction or simply to buy isolated bills and pay for them, was a question of fact for the trial court to determine, and we cannot say that there is no substantial evidence to support his finding in favor of the Mine & Smelter Supply Company. The fact that terms of payment were agreed upon as thirty days after shipment of each lot of material, and that the purchaser started out by making its payments in accordance therewith, does not change the transaction from a continuous arrangement to one of separate and distinct orders, each amounting to a contract. The fact that the mortgage was recorded on a particular day, when the whole of the material thus far purchased had been paid for, does not by any means prove that other and further purchases and shipments were not in contemplation of the parties under the original continuing arrangement, upon which the materialman had a right to rely in the absence of notice to the contrary. Nor does the payment of bills as they become due destroy or terminate the continuous nature of the arrangement. Sandusky Grain Co. v. Borden's Condensed Milk Co., 214 Mich. 306, 183 N. W. 218.

It follows that the judgment of the trial court was in all respects correct and should be affirmed, *except* as to the requirement that lien claimants should prorate costs and expenses of administration before exhausting asset No. 5 for that purpose, as to which the judgment should be reversed, with instructions to use asset No. 5 for the payments mentioned before calling upon lien claimants to prorate and pay any expenses or allowances, and the causes should be remanded.

It is so ordered.

WATSON and CATRON, JJ., concur.

BICKLEY, C. J., and PARKER, J., did not participate.