117 P.2d 815

**SANCHEZ v. CONTRACT TRUCKING CO.**

No. 4645.

Supreme Court of New Mexico.

Oct. 7, 1941.

Tibo J. Chavez, of Belen, and W. A. Keleher and A. H. McLeod, both of Albuquerque, for appellant.

Carl H. Gilbert, of Santa Fe, for appellee.

BICKLEY, Justice.

The complaint seeks damages for the alleged wrongful death of plaintiff's intestate, arising out of a collision of a truck driven by the deceased and one driven by an employee of the defendant. It affirmatively appears from the complaint that the defendant's truck was engaged in business as a common carrier at the time of the accident. The plaintiff is the administratrix of the estate of the decedent and sued as such.

A demurrer to the complaint appropriately challenged the plaintiff's right to sue as administratrix. The demurrer was sustained, the plaintiff refused to further plead and judgment was entered for the defendant.

The sole question in the case is whether a cause of action for death, caused by the negligence of the driver of a truck, while engaged as a common carrier, arises under the general statute relative to actions for death by wrongful act (Sections 36-102 et seq. Compilation 1929), or under the statute covering such actions where death arises from the negligence of any employee, "Whilst running, conducting or managing any locomotive, car, or train of cars, or of any driver of any stage coach or other public conveyance." Section 36-101 Compilation 1929 Supplement 1938.

If the action was properly brought under the general statute, the administratrix was the proper party plaintiff, and the demurrer should have been overruled. If it should have been brought under the statute relative to deaths arising from the negligence of the driver of a car, or a stage coach, or other public conveyance, the only proper party plaintiff would have been the surviving wife, child, parent, brother or sister of the deceased, and the trial court correctly sustained the demurrer.

Section 36-101, Comp. 1929, as amended, controls actions for wrongful death alleged to have been caused by the negligence of a truck, while engaged as a common carrier.

Two questions are presented, viz.:

1. Is the applicability of the statute confined to means of transportation which were known at the time of its original enactment in 1882?

2. Does the doctrine of ejusdem generis restrict the applicability of the statute to passenger carrying conveyances?

These questions were answered in the negative by the Circuit Court of Appeals of the Tenth Circuit in the case of Cain v. Bowlby, 114 F.2d 519, decided September 3, 1940, writ of certiorari denied 311

U.S. 710, 61 S.Ct. 319, 85 L.Ed. 462, Dec. 9, 1940.

█ Although this court is not bound by the decisions of Federal Courts, nevertheless, such decisions, particularly of courts of our own Circuit, are entitled to special consideration.

The opinion of the court was prepared by Circuit Judge Bratton. A dissenting opinion was filed by Circuit Judge Phillips. We shall consider and briefly discuss each of these opinions.

While the opinion of the Court delivered by Judge Bratton in our view, upon sound reasoning, announced the correct conclusion and needs no supporting argument, we find in circumstance and adjudications valuable support thereof.

█ We find the answer to the first question stated thus in the fourth syllabus to Cain v. Bowlby, supra: "Generally, in the construction of statutes, legislative enactments, in general and comprehensive terms, and prospective in operation, apply to persons, subjects, and businesses within their general purview and scope, though coming into existence after their passage, where the language fairly includes them." It is interesting to note that the Editorial Staff of West's in their Digest, Key number this headnote as "Statutes 234½." It is significant that these editors digest our decision in State v. Butler, 42 N.M. 271, 76 P.2d 1149, in part, to the same key number as follows: "Under statute penalizing possession of lottery tickets for purposes of vending, book containing 120 tickets, each to be sold for 10¢ and entitling holder of lucky ticket to $9 prize, the lucky ticket being determined from names of two baseball teams making the high score for the day contained on the ticket, was a 'lottery,' which is a game of hazard in which small sums of money are ventured for chance of obtaining a larger value in money or other articles, notwithstanding that baseball as played by the use of the tickets was not known at time of enactment of statute. Comp.St.1929, § 35-3804." And we note further that this rule of statutory construction is applied in Browder v. United States, decided February 17, 1941, by the Supreme Court of the United States, 312 U.S. 335, 61 S.Ct. 599, 85 L.Ed. 862, and is thus digested by West's: "Statutes ☞234½. Though a statute speaks from its enactment, even a criminal statute embraces everything which subsequently falls within its scope." In this decision the court cited and apparently relied upon the decision in Cain v. Bowlby, supra.

Furthermore, Judge Bratton, in Cain v. Bowlby, referred to the case of Drolshagen v. Union Depot R. Co., 186 Mo. 258, 85 S.W. 344, in which it was held that the tort of a motorman of a street car did not come within the scope of the statute for the reason that at the time of its enactment, street cars and motormen were unknown, said it was entitled to respectful consideration, but declined to be persuaded by it, although our original statute was taken from Missouri. Tracing the construction of the Missouri statute by the

courts of that state, we find the later decision of the Supreme Court of Missouri in Higgins v. St. Louis & S. Ry. Co., 197 Mo. 300, 95 S.W. 863, 865, where the court was called upon to squarely decide the question of whether or not the Missouri statute, as originally enacted (in the form in which it was adopted in New Mexico), would cover death caused by the negligent operation of types of common carrier conveyances which were unknown at the time of the original enactment. The Missouri Court there considered the question in considerable detail and came to the conclusion that the statute, prior to its amendment in 1905, covered all common carriers, including both automobiles and street cars. Pertinent portions of this decision are as follows:

"To our mind the purpose of this statute was to allow damages for the negligent acts of the servants managing, running, and controlling *public conveyances*.

"These conveyances may be such as are composed of steam engines and cars; they may be cars propelled by horse power; they may be cars propelled by electricity; they may be coaches propelled by horse power; they may be coaches propelled by steam or other power, as the automobile, so they be public conveyances. The statute uses the term 'or any other public conveyance.' But we need not go even thus far. The statute says 'whilst running, conducting or managing any locomotive, car or train of cars.' Notice the punctuation and connectives; analyze the sentence, supplying the omitted words, and

we have: (1) 'Whilst running, conducting or managing any locomotive.' (2) 'Whilst running, conducting or managing any car.' (3) 'Whilst running, conducting or managing any train of cars.' The motive power used in the locomotive is not limited to steam, nor is the method of running the car, or train of cars, limited to any particular means or motive power. It was no doubt couched in these general terms, when originally enacted, in view of our American progressiveness.

"If we are to construe the statute otherwise, we would have a singular situation. There is no question that a street car is a public conveyance. If we attach horses thereto and put on a driver, under another clause of the statute, we would have liability of the company, but according to contention of counsel for defendant, no liability, if we changed the propelling power to electricity. In other words we would have street railway companies liable at times and not liable at other times, if they changed their motive power. In our judgment the statute was intended to apply to public conveyances of whatever kind, as first hereinabove stated. The bench and bar of the state have proceeded upon that theory for these many years, and it remained for the act of 1905, to suggest to lawyers, for the first time, that street railways were not within the purview of the statute. This act of 1905 brings about several radical changes in the statute, among others street cars are specifically mentioned, but it does not necessarily follow from this fact that the stat-

ute was not previously broad enough to cover such public conveyances. This change might have been suggested to the legislative mind, by the suggestion made by Valliant, J., in Drolshagen v. [Union Depot] Ry. Co., 186 Mo. 258, 85 S.W. 344, decided December 22, 1904, the motion for rehearing being decided February 15, 1905, while the Legislature was in session. However, in that case, Judge Valliant was 'better satisfied' to leave the judgment rest upon another and different proposition, and we think that to conclude that he intended to hold section 2864, as not applicable to street railways, a misconception of his opinion." (Emphasis supplied.)

Since the Missouri decision last quoted employed the argument that the Missouri bench and bar had proceeded for many years upon the theory that the statute was intended to apply to public conveyances of whatever kind, this seems a good place to call attention to the fact that the bench and bar of this state have proceeded on that theory.

See Romero v. Atchison, T. & S. F. Ry. Co., 11 N.M. 679, 72 P. 37, discussed and followed by the court in Cain v. Bowlby, supra.

In Ickes v. Brimhall, 42 N.M. 412, 79 P.2d 942, the statute here involved was held applicable to the death of a passenger in an automobile while the vehicle was being used as a common carrier. It is true the precise point here raised was not presented in that case, yet it is significant that we there apparently followed the construction placed on the act by the Territorial Supreme Court in the Romero case, supra, to the effect that Sec. 1 applied to deaths caused by common carriers, saying: "We are asked to determine upon this appeal whether the cause of action for wrongful death provided by 1929 Comp. § 36-101 (amended, Laws 1931, c. 19) *against common carriers,* corporate or natural persons, survives the death of the statutory wrongdoer, no action having been instituted prior thereto." (Emphasis supplied.) And in Lopez v. Townsend, 42 N.M. 601, 82 P.2d 921, this statute was applied to a case where a man walking on the road was killed by a motor bus.

We revert to our consideration of the Missouri decisions to call attention to Drakesmith v. Ryan, Mo.App., 57 S.W.2d 727, 729. Following the decision in Drolshagen v. Union Depot Ry. Co., supra, the Missouri legislature amended its statute in 1905, Laws 1905, p. 135, by adding thereto a specific mention of street cars and motor vehicles. Although Drakesmith v. Ryan, supra, was decided after the 1905 amendment to the Missouri statute, it would seem to be in point in our present consideration. There, as here, death was claimed to have been caused by negligence in the operation of a truck while engaged as a common carrier. It was there urged that although the act was applicable to motor vehicles, still under the doctrine of ejusdem generis, it would only be applicable to passenger carrying vehicles performing services similar to those of a stage coach. The court said:

"The burden of defendant's point is that the statute, as it originally stood, only embraced cases where the death had resulted from the negligence of the driver of any 'stage coach, or other public conveyance'; that, by the subsequent addition of the words 'automobile, motor car,' the Legislature did not intend to include every automobile or motorcar, but only such as would be consonant with the idea conveyed by the words 'stage coach, or other public conveyance'; that a stagecoach was used to convey passengers; and that consequently the words 'automobile, motor car, or other public conveyance,' as they now appear in the statute, must be held to refer to conveyances of passengers and not to conveyances of goods.

"We can not believe that there is any merit to this contention. Of course the term 'other public conveyance,' following the words 'stage coach, automobile, motor car,' is used in the ejusdem generis sense (Drolshagen v. Union Depot R. Co., 186 Mo. 258, 85 S.W. 344); but in any event there is no occasion to limit the application of the statute to accidents involving conveyances of passengers. Even a stagecoach conveyed goods as well as passengers, and there is nothing to indicate that, in amending the statute so as to include motor vehicles, the Legislature proposed to restrict its application within the narrow limits claimed. Rather, we think it was the purpose of the Legislature to use the term 'public conveyance' in the sense of 'common carrier,' and to make the statute cover carriers by rail, water, and land.

In this instance the trucks of defendant were properly classed as automobiles or motorcars; and, inasmuch as they were also public conveyances, in that they were used in defendant's regular business to transport freight for hire, the application of the statute seems established. Schrader v. Burkel (Mo.Sup.) 260 S.W. 63; Myers v. Kennedy, 306 Mo. 268, 267 S.W. 810."

In the dissenting opinion of Judge Phillips in Cain v. Bowlby, supra, relied upon by appellant, it is said: "I agree that the phrase 'other public conveyance' is not limited to conveyances in use at the time the original statute was enacted, but it is my view that it should be limited to conveyances like or analogous to a stage coach." Citing Drolshagen v. Union Depot Ry. Co., Mo.Sup., supra.

Neither Higgins v. St. Louis & S. Ry. Co., supra, nor Drakesmith v. Ryan, supra (both later Missouri decisions), were cited, and it seems quite possible that had these two cases been before the Circuit Court of Appeals, Judge Bratton would not have cited the Drolshagen case, even as deferentially as he did, and that Judge Phillips would not have employed it in support of his views.

From all of the foregoing it appears that the district court was not in error in sustaining the demurrer.

The judgment should be affirmed, and

It is so ordered.

BRICE, C. J., and ZINN, SADLER, and MABRY, JJ., concur.