502 P.2d 1004

**CARDINAL FENCE CO., INC., Appellant,**

**v.**

**COMMISSIONER OF the BUREAU OF REVENUE of the State of New Mexico and the Bureau of Revenue of the State of New Mexico, Appellees.**

**No. 916.**

Court of Appeals of New Mexico.

Oct. 6, 1972.

Stephen Durkovich, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., John C. Cook, Bureau of Revenue, Asst. Atty. Gen., Santa Fe, for appellees.

## OPINION

WOOD, Chief Judge.

The issue is the liability of Cardinal (Cardinal Fence Company, Inc.) for gross receipts tax under New Mexico's Gross Receipts and Compensating Tax Act. See § 72–16A–1 et seq., N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1971). Liability depends on the meaning of the words "construction" and "contracting" as those words are defined in the applicable tax statutes.

The Bureau of Revenue audited Cardinal's books and records for the period January 1, 1968 to February 28, 1971. On the basis of the audit the Bureau issued a notice of assessment of taxes. After a conference, the amount of the assessment was reduced. Cardinal protested its liability for the reduced amount. The protest was denied by the Commissioner's Decision and Order; this direct appeal followed. Section 72–13–39, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1971).

The three types of transactions involved appear in paragraph 10 of the stipulation between the parties. It reads:

"10. Taxpayer's transactions with buyers during the period of the assessment were in three forms:

"a) Taxpayer sold material which would become part of a fence either alone and let the buyer pick it up or had it delivered to a location where the buyer wanted to erect it.

"b) Taxpayer delivered the fencing material to a job site designated by the buyer, set the posts, and the buyer erected the remainder of the fence.

"c) Taxpayer delivered the fencing material to a location designated by the buyer and erected the entire fence on that location."

Receipts from these transactions were taxable unless a deduction was authorized.

The parties stipulated:

" . . . For sales occurring on and after July 1, 1969, the Bureau audit included in taxpayer's gross receipts, taxpayer's receipts from sales indicated in paragraphs 10(a) and (b), above, when these sales were to non-profit schools, colleges, universities, hospitals, religious, or charitable organizations. . . . "

Cardinal claims these receipts were improperly included in the audit because they were deductible under § 72–16A–14.15, N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, Supp. 1971). The Commissioner ruled they were not deductible.

For the time period involved, July 1, 1969 to February 28, 1971, there are two § 72–16A–14.15, supra. The first was enacted by Laws 1969, ch. 144, § 50. This first section was repealed and the second (and present) section was enacted by Laws 1970, ch. 12, § 4. Both sections provided for a deduction from gross receipts where there was a sale of certain tangible personal property to organizations that had been granted an exemption from federal income tax. We assume the paragraph 10 (a) and (b) transactions were sales of tangible personal property to organizations exempt from the federal income tax.

Both § 72–16A–14.15, supra, state receipts from the sale of tangible personal property " . . . that will become an ingredient or component part of *a construction project are not receipts . . .* " from selling property for the purposes of that section. (Our emphasis).

Paragraphs 10(a) and (b) are to the effect that the material sold becomes a component part of a fence. The question is whether installation of a fence is a construction project.

The paragraph 10(c) transactions involve the definition of "service." Two definitions are involved. Up to July 1, 1969 of the audit period, the applicable definition, Laws 1966, ch. 47, § 3(J) reads:

" 'Service' means all activities engaged in for other persons for a consideration, which activities involve primarily the performance of a service as distinguished from selling property. 'Service' includes contracting and all materials employed in contracting are to be treated as part of the service. . . . "

After July 1, 1969 of the audit period, the applicable definition, Laws 1969, ch. 144, § 1(K) (currently compiled as § 72–16A–3(K), supra), reads:

"K. 'service' means all activities engaged in for other persons for a consideration, which activities involve primarily the performance of a service as distinguished from selling property.

" 'Service' includes construction activities and all tangible personal property that will become an ingredient or component part of a construction project. . . . "

The first sentence of each of the quoted laws is the same. Cardinal relies on this first sentence, contending that a paragraph 10(c) transaction was not primarily the performance of a service. The stipulated facts tend to support Cardinal's claim that the definition of service in the first sentence of the two laws is not applicable. Under this view, paragraph 10(c) trans-

actions would not be a service but sales of tangible personal property and under statutory provisions not here pertinent, Cardinal could claim a deduction from gross receipts for tax purposes.

However, the second sentence of the two laws defining "service" must be considered. Prior to July 1, 1969, service included ". . . contracting and all materials employed in contracting. . . ." After July 1, 1969, service included ". . . construction activities and all tangible personal property that will become an ingredient or component part of a construction project. . . ."

Cardinal asserts the word "service" in the second sentence of the two applicable laws has as its meaning the definition of "service" in the first sentence. Under this view, the contracting or construction activities in the second sentences could not be a "service" unless the activities involved came within the definition of the first sentence; that is, unless the activities were primarily the performance of services.

This view, in our opinion, is contrary to the intention of the Legislature. See Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200 (1965). The Legislature has clearly defined service in two ways. Neither definition is worded so that one definition is a condition for application of the second definition.

■ If, however, the legislative intent should be considered to be unclear, we must consider the relation of each sentence to the other. Compare New Mexico Electric Service Co. v. Jones, 80 N.M. 791, 461 P.2d 924 (Ct.App.1969). That relationship is that of the general to the specific. The first sentence relating primarily to the performance of services is general. The second sentences relating to contracting and construction activities, are specific. If interpretation is required, the specific provision controls. State v. Thomson, 79 N.M. 748, 449 P.2d 656 (1969) and cases therein cited.

Thus, whether the legislative intent be clear or whether interpretation is required, the meaning of "service" in the second sentences of the two laws is applicable. After July 1, 1969, the second sentence uses the word "construction." Thus, for paragraph 10(c) transactions after July 1, 1969, the meaning of "construction" determines, as in the paragraph 10(a) and (b) transactions, whether Cardinal could claim a deduction. Prior to July 1, 1969, the meaning of "contracting" determines whether a deduction may be claimed for paragraph 10(c) transactions. Paragraphs 10(a) and (b) transactions are not involved prior to July 1, 1969.

Since July 1, 1969, "construction" has been defined in § 72–16A–3(C), N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, Supp.1971). That definition begins:

"'construction' means building, altering, repairing or demolishing in the ordinary course of business any:"

Thereafter, twelve items are listed. Section 72–16A–3(C), supra, then states that construction "also means," and then lists four additional items. No claim is made that these last four items, (items 13 through 16 of the statute), are applicable. The question is whether the installation of a fence comes within any of the first twelve items listed. Of these twelve items, the Commissioner relies on items (2) and (12). Thus, for this appeal, the Commissioner would define "construction" as the building, in the ordinary course of business, any:

". . . .

"(2) building, stadium or other structure;

". . . .

"(12) similar work."

It is not clear, from the statutory language, that building a fence comes within the meaning of "structure" in item (2) or "similar work" in item (12). The legislative intent being unclear, interpretation is required. The applicable rule of construction is that of ejusdem generis. See State v. Gonzales, 78 N.M. 218, 430 P.2d 376 (1967).

Grafe v. Delgado, Sheriff, 30 N.M. 150, 228 P. 601 (1924) states the:

" . . . rule of statutory construction; ejusdem generis—is, that general words in a statute, which follow a designation or enumeration of particular subjects, objects, things, or classes of persons, will ordinarily be presumed to be restricted so as to embrace only subjects, objects, things, or classes of the same general character, sort or kind, to the exclusion of all others. . . . It arises from the presumption that, having enumerated a list of things or persons, the Legislature must have had in mind no other kind. . . . "

See also, State ex rel. Murphy v. Morley, 63 N.M. 267, 317 P.2d 317 (1957); Sanchez v. Contract Trucking Co., 45 N.M. 506, 117 P.2d 815 (1941); Maxwell Lbr. Co. et al. v. Connelly et al., 34 N.M. 562, 287 P. 64 (1930); Commercial Insurance Co. of Newark, N. J. v. Watson, 261 F.2d 143 (10th Cir. 1958).

■ Under ejusdem generis, the word "structure" in item (2), which follows "building" and "stadium" is limited in its meaning to things or classes of the same general character as buildings and stadia. This does not include fences.

Although we have not quoted the first eleven items listed as being "construction" in § 72–16A–3(C), supra, the "similar work" in item (12) is limited in its meaning to things or classes of the same general character of the preceding eleven items. Fences are not of the same general character of any of those eleven items.

■■ The result is that construction of fences does not come within the definition of "construction" in § 72–16A–3(C), supra; that the fencing material sold in paragraphs 10(a) and (b) transactions does not become a component part of a construction project under § 72–16A–14.15, supra; and that paragraph 10(c) transactions after July 1, 1969, do not come within the definition of "service" because the fencing material sold in those transactions also does not become a component part of a construction project. To the extent the Commissioner's Decision and Order is to the contrary, it is erroneous.

■ We reach the opposite result for paragraph 10(c) transactions prior to July 1, 1969. For this time period, "service" is defined to include contracting and materials employed in contracting. The applicable definition of "contracting" was enacted by Laws 1966, ch. 47, § 3(C). That definition is similar to the definition of "construction" which we have previously discussed in that there is an itemization of things included within the definition. That itemization includes as items (2) and (12) the same wording as items (2) and (12) in the definition of construction. But there is a significant difference. The definition of contracting begins:

" 'Contracting' includes, *but is not limited to,* constructing, altering, repairing or demolishing any:" (Our emphasis)

Under this definition in the 1966 law, carried forward into Laws 1968, ch. 57, § 1, the legislative intent is clear that the meaning of "contracting" is not limited by the itemization. The exhibits attached to the stipulation of facts show that paragraph 10(c) transactions prior to July 1, 1969 were contracting. Materials employed in contracting are, under the applicable statute, to be treated as part of the service. Thus, paragraph 10(c) transactions prior to July 1, 1969 were properly treated as services by the Commissioner and taxable as such.

The Decision and Order of the Commissioner is reversed. The cause is remanded to the Commissioner for further proceedings consistent with this opinion.

It is so ordered.

COWAN, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent from that portion of the majority opinion which subjects Cardinal Fence to taxation.

The Gross Receipts and Compensating Tax Act (§§ 72–16A–1 to 72–16A–19, N.M.S.A.1953 [Repl.Vol. 10, pt. 2, Supp. 1971]), with repeals and amendments thereof, is a rigmarole which defies explanation or interpretation. Neither the Commissioner, the attorneys, or the courts of review understand the words, phrases, definitions and complexities involved. Reed v. Jones, 81 N.M. 481, 468 P.2d 882 (Ct.App.1970); Church of the Holy Faith v. State Tax Commission, 39 N.M. 403, 48 P.2d 777 (1935).

Most of the definitions are surplusage. They create ambiguities, lead to various rules of construction, and cause a battle of the dictionaries.

Here, the legislature passed an ill-defined statute. The Commissioner waited three years to audit a taxpayer's records. The definitions were amended. After an indeterminate decision and order, the Commissioner added penalty and interest. He burdened the taxpayer with attorney fees, costs and expenses. Of late, the Commissioner has moved into cloudy areas, roamed about the rim of the definitions to seek additional avenues for revenue.

One purpose of the Gross Receipts Tax Act "is to provide revenue for public purposes," [§ 72–16A–2, supra], but this does not mean that this purpose should be accomplished by "semantic niggling."

Rules of statutory construction are adopted solely for the purpose of arriving at a decision for or against the Commissioner. These rules are used where ambiguity or doubt exists about the meaning of words or phrases. If there is no ambiguity or doubt, judicial construction disappears. Till v. Jones, 83 N.M. 743, 497 P.2d 745 (Ct. App.1972).

If there is ambiguity or doubt, it is not the fault of the taxpayer. Yet, where a deduction is claimed, we cast upon him the burden to clearly establish his right to a deduction, a deduction which must be clearly and unambiguously expressed in the statute. Reed v. Jones, supra.

But, where an exemption is claimed by a taxpayer, the statute should be liberally construed in his favor because the exemption is granted for a beneficent purpose. Santa Fe Lodge No. 460 v. Employment Security Commission, 49 N.M. 149, 159 P. 2d 312 (1945). Compare, however, Church of Holy Faith v. State Tax Commission, supra.

The tax deductions claimed by Cardinal Fence [§§ 72–16A–14.9, 72–16A–14.15, 72–16A–16, supra] are not for the benefit of Cardinal Fence. They are for the benefit of government agencies, institutions and Indian tribes. Therefore, we should protect the taxpayer by judicial construction.

In support of the taxpayer, we must not forget that taxing statutes should " 'be given a fair, unbiased and reasonable construction, without favor either to the taxpayer or the state, to the end that the legislative intent is effectuated and the public interests to be subserved thereby furthered.' " Evco v. Jones, 81 N.M. 724, 472 P. 2d 987 (Ct.App.1970); Chavez v. Commissioner of Revenue, 82 N.M. 97, 476 P.2d 67 (Ct.App.1970).

When the above rules of statutory construction are all thrown together, they cast a glow that the rules should be abolished. The court should decide each case without favor according to its own sense of justice. I proceed on that basis.

The parties stipulated that Cardinal Fence is engaged in the business of selling fences and fencing materials. This means it is not engaged in "servicing" fence installations, or "construction activities" or "contracting."

The parties stipulated that Cardinal Fence *sold installed fencing* and fencing material; that it was *the buyer's desires, buyer's time and economics*, or the type of fencing material sold which involved Cardinal Fence in the installation of fences; that when installed at the buyer's request, the gross receipts attributable to labor was less than a mean average of 25% of each installation. What this means is: The cost of installation was incidental to the

sale. It is not a condition of the sale. Cardinal Fence is completely indifferent as to what the buyer's request will be. It does not sell fences to generate fencing installation revenues. It does not render the incidental service to make the fence salable or to add to its value.

The Commissioner denied the protest because in the sale and erection of the entire fence, Cardinal Fence was performing "construction services" or "contracting services" as defined. The decision stated:

> For the period beginning December 5, 1969, I have relied on G.R. Regualtion [sic] 3(C)–2 in reaching my decision.

This regulation pertains to the definition of "construction" used in § 72–16A–3(C) which includes activities "related to the oil and gas industry." The basis for the decision was obviously erroneous. On this appeal, the Commissioner abandoned this position.

In its complaint on appeal, Cardinal Fence protested the assessment because it was not engaged primarily in the performance of service as distinguished from selling property; that the sale and erection of fencing material for governmental agencies, institutions and Indian tribes were deductible.

The Commissioner did not meet the issues raised. Cardinal Fence contends:

> The sole question to be decided . . . is whether . . . the sale and installation of a fence constitutes the sale of tangible personal property or the performance of a service.

The deduction statutes cited, supra, are clear and unambiguous. Cardinal Fence is entitled to a deduction for all tangible personal property sold to the agencies mentioned. Does this deduction include the incidental cost of installation? I say "yes."

Section 72–16A–3(K), supra, states in part:

"service" means all activities engaged in for other persons for a consideration, which activities involve *primarily* the performance of a service as distinguished from selling property. [Emphasis added.]

The stipulation states unequivocally that installation was not an activity which involved "primarily" the performance of a service. No inferences to the contrary can be permitted. See Till v. Jones, supra.

In Amarillo Lodge No. 731, A. F. & A. M. v. City of Amarillo, 473 S.W.2d 264 (Tex.Civ.App.1971), the Masons sought a statutory exemption from taxation of property used for purely public charity. By stipulation, the property was used for fraternal purposes *incident* to the Masonic work. The court said:

"Incident," in law, means pertaining to, or involved in, though not an essential part of another thing. The use of the property purely incidental to the primary purposes and functions of the organization does not defeat the exemption.

An establishment with a dance floor was not exempt from a cabaret tax where 60.8% or 50% of gross revenues was from the sale of refreshments, because refreshments were not incidental to its facilities for dancing. Luna v. Campbell, 302 F.2d 166 (5th Cir. 1962); Billen v. United States, 273 F.2d 667 (10th Cir. 1960). Sources of revenue, if substantial, can change "incidental" service to a "primary" service. Cardinal Fence derived an average of only 25% of its gross receipts only from those installations requested by buyers.

Installed fencing constitutes the sale of tangible personal property and Cardinal Fence is entitled to a complete deduction for all sales made.

The decision and order of the Commissioner is not sustained by substantial evidence in the record and is not in accordance with law. Judgment should be entered for Cardinal Fence.