598 P.2d 1182

**STATE of New Mexico ex rel. HEALTH AND SOCIAL SERVICES DEPARTMENT, Petitioner-Appellee,**

v.

**NATURAL FATHER and Natural Mother, Respondents-Appellants.**

**In the Matter of John DOE, Jane Doe, and Tom Doe, Children.**

**No. 3789.**

Court of Appeals of New Mexico.

July 24, 1979.

**224**

Emmett C. Hart, Albuquerque, for respondents-appellants.

Jeff Bingaman, Atty. Gen., Santa Fe, Elaine Watson, Asst. Atty. Gen., Albuquerque, for petitioner-appellee.

## OPINION

WOOD, Chief Judge.

The children's court ruled that the three children were neglected; legal and physical custody of the children was awarded to the Department of Human Services. The parents appeal. There are (1) three constitutional issues, (2) one issue of statutory interpretation, and (3) two evidentiary issues.

*Constitutional Issues*

(a) Title of the Children's Code

The Children's Code defines a "neglected child" and provides for disposition of the neglected child. Sections 32–1–3(L) and 32–1–34(A), N.M.S.A.1978. It is not claimed that transfer of legal and physical custody is unauthorized by the Code. Such a transfer removes the custody from the previous custodians, in this case, the natural parents.

The relationship of parent and child is of fundamental importance, opinion of Judge Hernandez in *Huey v. Lente*, 85 N.M. 585, 514 P.2d 1081 (App.1973), approved by the Supreme Court, 85 N.M. 597, 514 P.2d 1093 (1973). That relationship is affected by the change in custody. The parents contend that legislation authorizing an alteration in the parent-child relationship is unconstitutional unless the title to the authorizing legislation gives reasonable notice that the legislation affects parental rights.

■ The parents' claim is based on N.M. Const., art. IV, § 16 which states that the "subject of every bill shall be clearly expressed in its title . . .." The title to the Children's Code is: "AN ACT RELATING TO CHILDREN; ENACTING A CHILDREN'S CODE; AND AMENDING AND REPEALING CERTAIN SECTIONS OF NMSA 1953."

The "subject" of the Code is children, and that subject is clearly expressed. Provisions within the Code authorizing a change in the custody of a neglected child is a

detail provided for accomplishing the legislative purpose of protecting children. This detail need not be set forth in the title. There was no violation of N.M.Const., art. IV, § 16. *City of Albuquerque v. Garcia*, 84 N.M. 776, 508 P.2d 585, 71 A.L.R.3d 1 (1973); *Davy v. McNeill et al.*, 31 N.M. 7, 240 P. 482 (1925). Compare *Huey v. Lente*, 85 N.M. 597, 514 P.2d 1081, supra.

(b) Vagueness

The definitions of neglected child pertinent in this appeal read:

L. "neglected child" or "abused child" means a child:

\* \* \* \* \* \*

(2) who is without proper parental care and control or subsistence, education, medical or other care or control necessary for his well-being because of the faults or habits of his parents, guardian or custodian or their neglect or refusal, when able to do so, to provide them; or

(3) whose parents, guardian or custodian are unable to discharge their responsibilities to and for the child because of their incarceration, hospitalization or other physical or mental incapacity; or . ..

■ A statute may violate due process if it is so vague that persons of common intelligence must necessarily guess at its meaning. *State v. Najera*, 89 N.M. 522, 554 P.2d 983 (App.1976).

■ The parents contend that the words "other care or control" in subparagraph 2 and "mental incapacity" in subparagraph 3 are unconstitutionally vague. This claim goes to the words "as written." See *State v. Gurule*, 90 N.M. 87, 559 P.2d 1214 (App.1977). We do not agree that the words are unconstitutionally vague.

In determining vagueness, we consider the words in the context in which they are used. *State v. Najera*, supra. The "other care or control," according to the statute, is care and control other than subsistence, education and medical attention, but is care or control necessary for the child's well-being. Similarly, "incapacity" includes either a

physical or mental incapacity other than an incapacity resulting from incarceration or hospitalization. The statute gives notice that a 'child is neglected if the parents lack the mental capacity to provide the care or control necessary for the child's well-being. There will be differences of opinion, as in this case, as to what is "necessary," but such a difference of opinion does not make the statutory words unconstitutionally vague. The vagueness doctrine is based on notice. *State v. Najera*, supra. The statute gives fair warning of what amounts to neglect of a child.

*Minor Children of F.B. v. Caruthers*, 323 S.W.2d 397 (Mo.App.1959) held that " 'otherwise without proper care, custody or support' " was not unconstitutionally vague. *Matter of D.T.*, 89 S.D. 590, 237 N.W.2d 166 (1975) held that the phrases " 'lacks proper parental care,' " and " 'whose environment is injurious to his welfare' " were not unconstitutionally vague. *In re Neglected Child*, 130 Vt. 525, 296 A.2d 250 (1972) held the phrase " 'is without proper parental care or control, or subsistence, education, medical or other care or control necessary for his well-being' " was not unconstitutionally vague. Note the similarity between this last phrase and our statutory language. Concerning mental incapacity, *In re Williams*, 297 So.2d 458 (La.App.1974) held that the phrase " 'incapable of caring for himself or his personal safety' " was not unconstitutionally vague. These decisions support our holding of no unconstitutional vagueness.

(c) Unconstitutional Delegation

■ The parents assert that the statutory definitions, quoted above, are an unconstitutional delegation of legislative power because of an absence of standards within the definitions by which "proper parental control" and "mental incapacity" can be determined. See *State v. Jaramillo*, 83 N.M. 800, 498 P.2d 687 (App.1972). This issue is not a vagueness argument based on the above-quoted words. The contention is that absent a legislative provision defining the quoted words, the Department of Human Services makes the law by its determi-

nation of the meaning of the quoted words. The answer is that the meaning and application of the statute is not left to the Department of Human Services. The meaning and application is determined by a court, there is no missing standard. *State v. Gurule*, supra.

### Statutory Interpretation

The trial court concluded that each of the three children was a neglected child "by reason of the conduct and mental incapacity" of the parents. The conclusion as to "mental incapacity" is based on findings of mental retardation. The conclusion as to "conduct" is based on findings concerning living conditions, the lack of improvement in living conditions after "[n]umerous attempts" to help by various government agencies, the lack of "proper parenting" and the limited ability of the parents to learn "proper parenting skills."

The parents assert that these findings and conclusions are based on a meaning of "other care or control" and "mental incapacity" which is contrary to the meaning of those phrases, as used in the statute.

The parents contend that "other care or control" is a general phrase, limited in meaning by the enumeration which precede the phrase in the statute. That enumeration is "subsistence, education, medical . . . .." The parents also contend that "mental incapacity" is a general phrase, limited in meaning by the words "incarceration, hospitalization . . . .." The parents assert such a limited meaning is required by the doctrine of ejusdem generis. On the basis that the two phrases have limited meanings, the parents contend the conclusion of "neglect" is unsupported by the findings because the findings failed to use the limited meanings of the two phrases. The parents' contention is incorrect because the doctrine of ejusdem generis is not applicable.

■ *Grafe v. Delgado, Sheriff*, 30 N.M. 150, 228 P. 601 (1924) states that under the doctrine

general words in a statute, which follow a designation or enumeration of particular

subjects, objects, things, or classes of persons, will ordinarily be presumed to be restricted so as to embrace only subjects, objects, things, or classes of the same general character, sort or kind, to the exclusion of all others.

This doctrine, however, is no more than a rule of construction, *Grafe v. Delgado, Sheriff*, supra, which "is resorted to merely as an aid in determining legislative intent." *State v. Gonzales*, 78 N.M. 218, 430 P.2d 376 (1967). When the statutory words are unambiguous, there is no basis for utilizing a rule of construction to determine legislative intent; rather, intent is determined from the statutory language. *State v. McHorse*, 85 N.M. 753, 517 P.2d 75 (App.1973).

■ "Other care or control" appears in the phrase "without proper parental care and control or subsistence, education, medical or other care or control necessary for his well-being . . . .." Section 32–1–3(L)(2), supra. "Mental incapacity" appears in the phrase "unable to discharge their responsibilities to and for the child because of their incarceration, hospitalization or other physical or mental incapacity . . .." Section 32–1–3(L)(3), supra. Both phrases unambiguously use "other" in the sense of "distinct from . . . those first mentioned"; "different." Webster's Third New International Dictionary (1966). There being no ambiguity, there is no basis for application of the doctrine of ejusdem generis.

The trial court did not err in failing to apply a limited meaning to the two phrases.

### Evidentiary Issues

(a) Propriety of the Findings

The trial court found:

6. When the children were living with the respondents, MOTHER failed to properly maintain the home, resulting in filthy living conditions and a continuous stench.

7. FATHER realized that the living conditions in the home were very bad, but did nothing to improve the situation.

8. MOTHER and FATHER failed to provide a proper home environment con-

ducive to the normal mental, emotional and social development of the children.

9. Numerous attempts were made to help the family by agents from several different agencies including Peanut Butter and Jelly Therapeutic Pre-School, the Family Resource Center, and the Family Health Center, but the family made no progress while the children were living in the respondents' home.

10. MOTHER is retarded mentally, emotionally and socially.

11. MOTHER is retarded in her ability to exercise good judgment, in understanding the consequences of her actions, in understanding the needs of her children, in controlling her impulses, and in her capability for providing a minimally adequate home for the children.

12. FATHER is retarded mentally and emotionally.

13. FATHER has poor judgment and cannot directly provide the day-to-day care and supervision that the children need.

14. FATHER cannot provide the supervision of MOTHER which is necessary for the maintenance of a minimally adequate home for the children.

15. Psychological evaluations establish that the ability of MOTHER and FATHER to learn proper parenting skills is poor.

16. JOHN DOE, JANE DOE and TOM DOE are all severally retarded mentally, emotionally and socially.

17. The cause of the children's retardation is a continuing lack of proper parenting by MOTHER and FATHER.

18. The children would suffer further and more severe emotional and mental harm if returned to the custody of either or both their parents. The respondents' lack of proper parenting for the children has caused the disintegration of the parent-child relationship.

19. Since the children have been removed from the respondents' care and custody and placed in foster care, they have all dramatically improved mentally, emotionally, and socially.

The parents challenge most of these findings either as irrelevant, as evidentiary rather than ultimate facts, or not based on evidence that is clear and convincing. The parents also complain of the failure of the children's court to adopt their requested findings to the contrary.

 We comment on one of the findings. As to the other findings, whether evidentiary or ultimate, they support the conclusion that the three children were neglected. The trial court ruled that the evidence was clear and convincing; we agree. *Huey v. Lente*, 85 N.M. 597, 514 P.2d 1093, supra; see *Matter of Valdez*, 88 N.M. 338, 540 P.2d 818 (1975). The evidence being sufficient to support the findings made, the children's court did not err in refusing the contrary findings requested by the parents. *Seven Rivers Farm, Inc. v. Reynolds*, 84 N.M. 789, 508 P.2d 1276 (1973).

 Finding No. 16 states that each of the three children was severely retarded mentally, emotionally and socially. The evidence is sufficient to support this finding as to John. The evidence as to Jane and Tom (the younger two) was that they were developmentally retarded and that Jane was showing signs of developing the same mental and emotional problems as John; however, there is no clear and convincing evidence to support Finding No. 16 as to Jane or Tom. This does not aid the parents, however, because Finding No. 16 is superfluous. As defined in § 32–1–3(L)(2) and (3), supra, evidence that the child is severely retarded is not required for a ruling that the child is neglected. *Compare Matter of Pernell*, 92 N.M. 490, 590 P.2d 638 (App.1979). An erroneous finding, unnecessary to support the conclusion of neglect, is not grounds for reversal. *Mathieson v. Hubler*, 92 N.M. 381, 588 P.2d 1056 (App.1978).

(b) Limiting the Parents' Evidence

 The "neglect" proceedings involved three of five children in the family. The parents' theory was that the developmental problems of the three children were not because of their care or because of their environment. In support of this theory,

evidence was introduced that the other two children "were healthy, normal, bright children for their age, and that their care and environment was the same as the other children." The parents contend the children's court erred in not allowing them to "fully and completely" develop this evidence.

The children's court limited this evidence, remarking: "[I]f you're trying to show they have two children that are still there and they apparently have been able to maintain the home for the children, you've had that established about fifteen times."

It was not an abuse of discretion and, therefore not error, to restrict the submission of cumulative evidence. Evidence Rule 403; *State v. Brown*, 91 N.M. 320, 573 P.2d 675 (App.1977), cert. denied, 436 U.S. 928, 98 S.Ct. 2826, 56 L.Ed.2d 772 (1978).

The amended judgment and disposition is affirmed.

SUTIN and HERNANDEZ, JJ., concur.