599 P.2d 1049

**Eldon MILLER d/b/a Miller & Miller,
Plaintiff-Appellant,**

v.

**BUREAU OF REVENUE,
Defendant-Appellee.**

No. 3323.

Court of Appeals of New Mexico.

Jan. 11, 1979.

E. Douglas Latimer, Albuquerque, for plaintiff-appellant.

Jeff Bingaman, Atty. Gen., Richard M. Kopel, Sp. Asst. Atty. Gen., Santa Fe, for defendant-appellee.

OPINION

HERNANDEZ, Judge.

This is an appeal from the decision of the Commissioner of the Bureau of Revenue assessing gross receipts tax, penalty and interest on part of the income earned by appellant for the period from January 1, 1971, through December 31, 1976.

Most pertinent facts are set out in findings 6, 7, and 10, of the Commissioner's decision and order:

"6. Certain prime contractors entered into construction contracts with the New Mexico Highway Department to build highways in New Mexico. Those prime contractors contacted, and entered into oral agreements with, the taxpayer, as a result of which the taxpayer, and drivers it designated, using trucks owned by the taxpayer, hauled a variety of construction materials. The prime contractors' paid the taxpayer for these services.

7. The material hauled included hot asphalt, seal coat, and several kinds of base course material all of which are ultimately incorporated into the highways being constructed by the prime contractor. These materials generally are prepared and mixed at asphalt plants or mills where the material is loaded into the taxpayer's trucks. Sometimes, the material is loaded at pits or crushers. The plants, mills or crushers are operated by third parties, presumably, the prime contractors. The plants and mills generally are located as close to the highway construction as feasible. The taxpayer then hauls the material to the highway being constructed where the taxpayer dumps the load into lay-down machines (spreaders) or boxes. In the case of hot mix asphalt the truck is backed up to and locked into the spreader. The load of asphalt is emptied into the spreader as the spreader moves forward, spreading and compacting the mix on the highway being constructed. During this time, the truck is being pushed by the spreader while the truck driver steers the truck. In the case of base course, the trucks dump the load into boxes—apparently containers utilized by contractors when contractors spread the course material by bulldozers or scrapers on the highway. The trucks are also used in hauling riprap (rocks) and back-fill material.

10. All materials hauled are owned by third parties, generally the prime contractor; the taxpayer does not buy or sell the materials."

It is the gross receipts tax on this income that is in question.

The appellant claims that this income is exempt from the gross receipts tax by reason of Section 72–16A–14.7A, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1975):

"Receipts from selling a construction service may be deducted from gross receipts if the sale is made to a person engaged in the construction business who delivers a nontaxable transaction certificate to the person performing the construction service."

The key words are "construction service", which are defined in the Gross Receipts and Compensating Tax Act §§ 72–16A–1 to 72–16A–19, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1975) as follows:

"C. 'construction' means building, altering, repairing or demolishing in the ordinary course of business any:
(1) road, highway, bridge, parking area or related project; . . ."
§ 72–16A–3C, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1975).

.     .     .     .     .

"K. 'service' means all activities engaged in for other persons for a consideration, which activities involve primarily the performance of a service as distinguished from selling property. . . .
'Service' includes construction activities and all tangible personal property that will become an ingredient or component part of construction project. . . ." § 72–16A–3K, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Interim Supp.1976–77).

The Bureau of Revenue has issued several interpretive regulations of §§ 72–16A–14.7 and 72–16A–3C, supra. The first was issued in 1969 and provides in part:

G.R. REGULATION 3(C)–1—

*CONSTRUCTION SERVICES AS DISTINGUISHED FROM OTHER SERVICES*

"The term 'construction' is limited to the activities which are listed in § 72–

16A–3(C) [sic]. 'Construction' does not include services that are only incidentally related to a construction project such as: hauling to the construction site, maintenance work, landscape upkeep, or the repair of equipment or appliances.

*Example 1*: T, a trucking company, contracts with R, a road construction company, to haul the necessary sand and gravel from an excavation site to the roadbed. T asks if it can deduct the receipts of its contract with R under § 72–16A–14.7, p. 77. Hauling sand and gravel from an excavation site to the construction site is not construction within the meaning of § 72–16A–3(C) [sic]. Therefore, T cannot deduct its receipts from the contract."

The 1969 G.R. Regulations under § 72–16A–14.7 provide in part:

G.R. REGULATION 14.7–1—

*SERVICES MUST BE PERFORMED DIRECTLY ON THE PROJECT OR IMMEDIATELY ADJACENT THERETO*

"To be deductible under this section, the services must be performed directly on the project or immediately adjacent thereto. Indirect services, such as accounting costs, architectural plans, engineering services, drafting services, bid depositories, and plan rooms are not construction services coming within the definition of construction under § 72–16A–3(C) [sic], p. 2.

*Example 1*: K is a surveying company that contracts with C, a contractor, to survey the site, set the stakes for the building, and give C the elevation reading. K incorrectly maintains that it is selling a construction service to C and that therefore the receipts are deductible. Surveying and related services are not included as construction under the definition of construction under § 72–16A–3(C) [sic], p. 2. Therefore, they are not construction services as defined under § 72–16A–14.7."

■ The appellant alleges five points of error, the fourth of which is dispositive of this appeal, to-wit: "The decision of the Commissioner denying the exemption is contrary to the law of this state providing an exemption for construction services." The law applicable to the decision of this matter is the following:

"A regulation adopted by an administrative agency creating an exemption not contemplated by the act or included within the exemption specified therein is void." *State v. Ashby*, 73 N.M. 267, 271, 387 P.2d 588, 590 (1963).

The converse is also true. *Rainbo Baking Co. of El Paso v. Commissioner of Rev.*, 84 N.M. 303, 502 P.2d 406 (Ct.App.1972).

"Statutes are to be given effect as written and, where free from ambiguity, there is no room for construction." *State v. Elliot*, 89 N.M. 756, 767, 557 P.2d 1105, 1106 (1977).

"It is undoubtedly a rule of statutory interpretation that the construction given a statute by the administrative agency charged with the enforcement of it is a significant factor to be considered by the courts in ascertaining the meaning of such statute. [Citation omitted.] But where there is no ambiguity and the interpretation is clearly erroneous, such administrative interpretation does not give legal sanction to a long continued incorrect construction." *California Drive-In Restaurant Ass'n v. Clark*, 22 Cal.2d 287, 294, 140 P.2d 657, 661 (1943).

■ Applying these rules to the instant matter, it is our opinion that the language of § 72–16A–14.7A, supra, and § 72–16A–3C(1) and § 72–16A–3K is definite and unambiguous. It is also our opinion that this language does not support the interpretive regulations of the Bureau of Revenue, insofar as they relate to the type of activities conducted by the appellant. The Commissioner acknowledges in finding No. 6 that the prime contractors were engaged in building highways. He also acknowledges in that finding that appellant was performing a service. In finding No. 7, he acknowledges that the materials which the appellant hauled were "ultimately incorporated into the highways." Finding No. 10, points out the materials being hauled were not owned by the appellant or bought or sold by him. This fact pattern fits squarely within the conditions of § 72–16A–14.7A, supra.

The decision and order of the Commissioner is reversed and the Bureau's interpretive regulations G.R. Regulation 3(C)–1 and G.R. Regulation 14.7–1 are declared void, insofar as they apply to these facts.

IT IS SO ORDERED.

LOPEZ, J., concurs.

SUTIN, J., concurs in the result.

SUTIN, Judge (concurring in the result).

*I concur in the result.*

Taxpayer was engaged in using trucks owned by the taxpayer to haul a variety of construction materials for certain prime contractors who entered into construction contracts with the New Mexico Highway Department to build highways in New Mexico.

The Commissioner made extensive findings which accurately stated the facts. Based upon G.R. Regulation 3(C)–1—, his decision was correct. By petition for certiorari to the Supreme Court, his decision will be sustained and this opinion will not be published. Nevertheless, I desire to express my views to be preserved for future use. This case is one of first impression in New Mexico and deserves serious consideration.

The Commissioner held that taxpayer was subject to the gross receipts tax because "the taxpayer only hauled or transported personal property from one place to another. After delivering the personal property to a designated place, others, not the taxpayer, began or continued the function of building a highway." In other words, "this taxpayer did not 'build' anything."

Section 7–9–52(A), N.M.S.A.1978 reads in pertinent part:

> Receipts from selling a construction service may be deducted from gross receipts if the sale is made to a person engaged in the construction business
> . . . . .

The sole issue on this appeal is whether taxpayer sold a "construction service" to a highway contractor engaged in building a highway. If taxpayers did sell this "construction service," it is exempt from payment of the gross receipts tax.

My dispute with the Commissioner revolves over the meaning of "construction service." His view is narrow—mine is broad. It is obvious that a Commissioner will narrowly interpret the statute if it will provide additional revenue for public purposes. My criticism of the office of a Commissioner has been stated many times. See *Ealey v. Bureau of Revenue*, 89 N.M. 174, 548 P.2d 454 (Ct.App.1975), Sutin, J., specially concurring, rev'd, 89 N.M. 160, 548 P.2d 440 (1976). Taxes are the sinews of the State and taxpayers sustain the operation of the State and its political subdivisions. But the office of the Commissioner was not created for the purpose of unduly burdening the taxpayer by a narrow interpretation of the statute. He must hold a genuinely impartial hearing conducted with critical detachment. This is psychologically improbable if not impossible when the Commissioner has at once the responsibility of appraising the strength of the case and seek to make it as strong as possible in favor of the State.

The Commissioner sits as a judge in an adversary proceeding between the State and the taxpayer. The Commissioner must not be arrayed against the taxpayer. Yet it is his attorney that represents the State and it is the advice of his attorney that becomes the Decision of the Commissioner. If a decision of the Commissioner was ever favorable to the taxpayer, the State has never appealed the decision to this Court. This administrative process establishes the fact that the Commissioner and the State are one entity arrayed against the taxpayer.

The duty of the Commissioner and his attorney is to construe language of doubtful meaning in the Act in favor of the taxpayer and most strongly against the taxing authority. *Western Elec. Co. v. N. M. Bureau of Rev.*, 90 N.M. 164, 561 P.2d 26 (Ct.App.1976), Sutin, J., specially concurring; *Torridge Corporation v. Commissioner of Revenue*, 84 N.M. 610, 506 P.2d 354 (Ct.App.1972), Sutin, J., dissenting.

One of the purposes of the Act "is to provide revenue for public purposes by levying a tax on the privilege of engaging in *certain activities* within New Mexico . . . ." [Emphasis added.] Section 7–9–2. This purpose should not be accomplished with "semantic niggling." *Cardinal Fence Co., Inc. v. Commissioner Bur. of Rev.*, 84 N.M. 314, 502 P.2d 1004 (Ct.App. 1972), Sutin, J., dissenting. These "certain activities" constitute a business operation because an excise tax is imposed upon any person engaged in business in New Mexico. Section 7–9–4.

A contractor engaged in the business of building a highway is confronted with many "construction activities" upon all of which income the contractor is subject to the excise tax. To avoid a double tax, one who sells a "construction service" to the contractor may deduct all monies received from gross receipts. In the instant case, the Commissioner seeks to impose a double tax.

The words "construction service" mean "construction activities" engaged in for other persons for a consideration. Section 7–9–3(K). "Construction activities" are words of doubtful meaning and must be construed in favor of the taxpayer. A reasonable interpretation of the words leads to the conclusion that the taxpayer is exempt from taxation if he sells to a prime contractor a service that falls within the circumference of all of the "construction activities" of the contractor. I take this view to avoid the doctrine of double taxation.

Under Section 9(b) of the Atomic Energy Act of 1946, the "activities" of the Atomic Energy Commission were exempt from state taxation. The word "activities" was given such broad and comprehensive meaning that independent contractors who performed sub-contract construction work for the Commission were exempt from state sales and use taxes. *Reynolds Electrical & Engineering Co. v. Lujan*, 64 N.M. 43, 323 P.2d 890 (1958). For the broad definition of the term "activities," see *Carbide & Carbon Chemicals Corp. v. Carson*, 192 Tenn. 150, 239 S.W.2d 27 (1951); aff'd, *Carson v. Roane-Anderson Co.*, 342 U.S. 232, 72 S.Ct. 257, 96 L.Ed. 257 (1952), cited in *Reynolds*.

In the instant case, the prime contractor is comparable to the Atomic Energy Commission, and taxpayer, a subcontractor who sells his "construction activities" to the prime contractor, is comparable to those who did construction work for the Commission.

Section 7–9–3(C) defines "construction" as building a highway in the ordinary course of business. This definition relates to the work performed by the prime contractor. To complete satisfactory performance of the work, all labor, materials and equipment are essential. When a contractor bids for a highway job, its "construction activities" includes hauling by truck hot mix, base course, aggregate and other materials. Without this service, the highway cannot be built. This type of "activity" is a part of the construction process. It is of necessity a "construction activity."

The Commissioner contends that the taxpayer must "build" some part of the highway to constitute a "construction activity"; that all contract work performed prior to, during or after the completion of the highway that is not manual labor used in the actual construction of the road is not a "construction activity."

The Commissioner holds that a concrete pumping truck which lays down concrete in inaccessible locations such as a box culvert or the upper stories of a building, performs a "construction activity." If taxpayer had dumped the materials upon the roadway instead of by the side of it, would he have been entitled to the exemption? Where shall the line of demarcation be drawn?

To adopt the Commissioner's interpretation of the words "construction activities" unduly limits the meaning of the words. I interpret the Commissioner's view to mean that "construction activities" do not begin until the materials hauled to the job are actually used to build the highway. To me, this is a rather narrow view. The taxpayer sold a construction service to the prime contractor and he is entitled to the benefit of Section 7–9–52(A).