599 P.2d 1059

**STREBECK PROPERTIES, INC., Appellant,**

v.

**NEW MEXICO BUREAU OF REVENUE, Appellee.**

**No. 3611.**

Court of Appeals of New Mexico.

March 20, 1979.

James F. Hart, Clovis, for appellant.

Jeff Bingaman, Atty. Gen., Daniel H. Friedman, Sp. Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

WALTERS, Judge.

Appellant (Strebeck) conducts a 24-hour coin-operated laundry business in Clovis. The washers and dryers were purchased in another state and installed by Strebeck at its Clovis location. The business is operated as many laundromats are: the premises are not usually attended by any Strebeck employees; customers bring clothes to be washed and dried, select a machine or machines to be used, deposit the necessary coins required to make the machine(s) operate, and remove the clothes when the washing or drying operation is complete. No

personal services are performed for customers by Strebeck. Strebeck pays the New Mexico Gross Receipts Tax on the proceeds received from the machines.

Upon these facts, not disputed on appeal or in the record, and after an audit for the period of April, 1974 through June 30, 1977, the New Mexico Bureau of Revenue (Bureau), assessed a compensating tax under § 72–16A–7, N.M.S.A. (1953) [now § 7–9–7, N.M.S.A. (1978)]. Strebeck filed a protest arguing that since its equipment was leased, it was entitled to the deduction provided in § 72–16A–15.1, N.M.S.A. (1953) [now § 7–9–78, N.M.S.A.1978)]. The protest was denied by the Bureau's Hearing Examiner and Strebeck timely appealed.

The Decision and Order of the Bureau included the following paragraphs:

4. As stated by taxpayer, the issue in the case is the application of § 72–16A–15.1, N.M.S.A. (1953) [now § 7–9–78, N.M.S.A.1978], which provides:

The value of tangible personal property, other than furniture or appliances furnished as part of a leased or rented dwelling house or apartment by the landlord or lessor, and other than mobile homes as defined in § 64–1–8, N.M.S.A.1953, may be deducted in computing the compensating tax due if the person using the tangible personal property:

A. is engaged in a business which derives a substantial portion of its receipts from leasing or selling tangible personal property of the type leased; and

B. does not use the tangible personal property in any manner other than holding it for lease or sale, or leasing or selling it either by itself or in combination with other tangible personal property in the ordinary course of business.

5. The taxpayer contends it "leases" its coin-operated machines to its customers and relies on the definition of leasing as defined in § 72–16A–3(J) (which language is repeated in instructions which accompany blank CRS–1 reports).

6. At the hearing, it was contended that the taxpayer makes no "use" of the imported machines; the only "use" of the machines is by customers of the taxpayer. Under the definition of "use" in § 72–16A–3(L), it is concluded that this taxpayer used the machines.

7. Is this taxpayer entitled to the deduction authorized in § 72–16A–15.1, which provides for a deduction from compensating tax, if the taxpayer is engaged in leasing the imported property to its customers? "Leasing" is defined in § 72–16A–3(J):

"Leasing" means any arrangement whereby, for a consideration, property is employed for or by any person other than the owner of the property;

A Bureau Regulation (G.R. Regulation 3(J):1) points out in the following example, that a license to use is not a lease:

*Example 1:* W Company leases ten coin-operated washing machines to the Parkdale Apartments. W claims that since Parkdale's tenants will in turn lease the machines for their own use, the receipts it receives from the transaction may be deducted under § 72–16A–14.5, p. 85, which allows a deduction for property leased for subsequent leasing. W may not deduct these receipts because Parkland's tenants are not leasing the washing machines. See G.R. Regulation 14.5:2, p. 85.

The parties agree that the sole issue to be resolved on appeal is whether Strebeck leased the use of its machines to its customers, qualifying it for the statutory deduction. The Bureau maintains that the laundromat operation constituted a license to the users, and imposition of the tax was correct.

The Bureau recognized that Strebeck claimed its deduction under § 72–16A–15.1 (see quoted Paragraph 4 above). It applied a Bureau regulation (see quoted Paragraph

7 above), which refers to the "leasing" definition of § 72–16A–3(J) [now § 7–9–3(J), N.M.S.A. (1978)], and cited the example thereunder illustrating a claimed deduction under § 72–16A–14.5, N.M.S.A. (1953) [now § 7–9–50, N.M.S.A. (1978)], which provides a deduction from *gross receipts* tax for receipts on tangible property *leased for subsequent leasing.* Neither the tax referred to in that section, nor the manner of acquisition of the tangible property, nor the illustration relied on by the Bureau has any application to the facts of this case.

Example 1 shown in Paragraph 7 of the Bureau's decision does not reach the "license-lease" distinction claimed by the Bureau. It does refer to G.R. Regulation 14.5:2 which, again, is a regulation applicable to a *gross receipts tax* deduction under § 72–16A–14.5 for receipts from leasing property that is to be subsequently leased by the first lessee. That regulation is entitled "Lease vs. License to Use," and the examples cited thereunder, even though concerned with gross receipts tax, may be instructive on the question of license or lease:

### G.R. REGULATION 14.5:2—LEASE vs. LICENSE TO USE—

*Receipts of* a person who is a *lessor* of tangible personal property *from leasing* tangible personal property *to a lessee who grants a license to use the leased items* of tangible personal property *to a third party* may not be deducted from gross receipts pursuant to this section. However, the deduction will be allowed if the lessor has accepted a non-taxable transaction certificate *from the buyer* in good faith that the property would be used in a non-taxable manner. [Emphasis supplied.]

If the lessee delivering the nontaxable transaction certificate does not use the property in a nontaxable manner, the Compensating Tax is due.

Example 1: Television Leasing, Inc., leases television sets to X Motel to place in the rooms of their guests. X Motel delivers a nontaxable transaction certificate to Television Leasing, Inc., pursuant to this section. X Motel may not properly deliver a nontaxable transaction certificate pursuant to this section because it is not subsequently leasing the television sets to its guest in the ordinary course of business; rather, it is granting its guests a license to use the television sets.

Example 2: X Bowling Equipment Company leases bowling equipment to a local bowling alley which in turn grants its customers a license to use that equipment. The local bowling alley may not deliver nontaxable transaction certificate to X Bowling Equipment Company pursuant to this section because the lease of the equipment is not for subsequent lease. See G.R. REGULATION 3(J):1, p. 22.

Example 3: X is in the business of selling and leasing golf carts. Y, a country club, leases a golf cart from X and permits golfers to use it for a consideration. X's receipts from leasing the golf cart may not be deducted from gross receipts pursuant to Section 72–16A–14.5, because Y is not subsequently leasing the golf cart to golfers, but is merely granting a license to use the golf cart.

G.R. Regulation 14.5:1 was not referred to by the Bureau in its decision but it, too, may shed some light on the Bureau's interpretations of such a transaction as it considers a lease. It reads:

### G.R. REGULATION 14.5:1—GENERAL EXAMPLES—

The following examples [sic] illustrate the application of Section 72–16A–14.5 in various situations:

Example 1: The H Tool Company manufactures fishing tools for use in the oil field. H leases these tools to J Rental Company which in turn rents the tools to the P Drilling Company. If the J Rental Company delivers a nontaxable transaction certificate to H, H may deduct the amount of its rental from its gross receipts.

Unlike the country club in Example 3 of G.R. Regulation 14.5:2 (dealing with gross receipts tax deductions), Strebeck customers do not conduct a larger business to which laundromat equipment is merely incidental; nor are they like the motel owners who lease television sets simply to provide an additional service to customers for the benefit of the principal business of renting rooms; nor do they fall into the same category as bowling alley operators who occasionally rent shoes and bowling balls and other bowling incidentals for the convenience of some of the customers of the alleys. All of those illustrations are concerned with operators of larger businesses providing services to their customers which are incidental to the principal businesses conducted. For purposes of being excused from payment of gross receipts tax, the supplier of such equipment to the business owner or operator is not considered to be leasing for re-lease.

The greater problem, however, is that (although Regulation 14.5:2 refers indiscriminately to "lessee" and "buyer") all of the illustrations are concerned with a lessor's liability for *gross receipts tax* on the lease price received from one who, in turn uses the merchandise in a leasing business and delivers to the first lessor a nontaxable transaction certificate. Those illustrations are not concerned with a *purchaser-lessor's* obligations to pay a *compensating tax* if the seller-supplier is an out-of-state merchant, and the purchaser uses the merchandise in a New Mexico leasing business. We do not find the Bureau's regulations helpful because they are directed toward a dissimilar section of the Act. Our inquiry is whether Strebeck is entitled to the deduction from compensating tax liability for the "value of tangible personal property . . . [used by a person who]: A. is engaged in a business which derives a substantial portion of its receipts from leasing . . . tangible personal property of the type leased; and B. does not use the tangible personal property in any manner other than holding it for lease . . . in the ordinary course of business." § 7–9–78, N.M.S.A. (1978).

The Bureau relied on the definition of "leasing" as set forth in its G.R. Regulation 3(J):1 to deny that appellant was leasing the washing and drying machines (see Paragraph 7 of the Bureau's decision quoted above), and concluded that Strebeck "used" the equipment as defined in § 72–16A–3(L) [now § 7–9–3(L), N.M.S.A. (1978)].

Example 1 of G.R. Regulation 3(J):1 is not in point. It is concerned with W Company's gross receipts tax liability and thus illustrates the provisions of § 72–16A–14.5 [now § 7–9–50], "Deduction; gross receipts tax; lease for subsequent lease," not with § 72–16A–15.1 [now § 7–9–78]: "Deductions; compensating tax; use of tangible personal property for leasing." Secondly, the claim of Parkland's "subsequent lease" of washing machines to its tenants falls because it is not in the "ordinary course" of Parkland's business, but is merely incidental to its principal and "ordinary" business of renting apartments. Finally, in justification of the last sentence of Example 1, and from the standpoint of *W's* liability for *gross receipts tax*, Parkland's tenants indeed are *not* leasing from W Company. This example is not of assistance in resolving the *compensating tax liability* of one in the shoes of Strebeck, an owner who purchases equipment out of state for the sole purpose of making its use available directly to its own New Mexico customers, not to the users of the entity to whom it first leases the property.

The second example of G.R. Regulation 3(J):1 was not cited nor quoted by the Bureau. It reads:

*Example 2*: C, a Texas contractor, enters into a contract for a road construction job in New Mexico. When he enters New Mexico to begin construction, he brings with him ten pieces of heavy equipment. But for the short time that he will require this equipment and giving thought to his future needs, C purchases three of the pieces and rents the other seven from the Heavy Equipment Leasing Corporation in Dallas, Texas. C consults the Bureau of Revenue as to the Compensating Tax liability. C must pay Compensating tax on the value of the three pieces he owns, but there is no

liability for Compensating Tax of the rental equipment. The rental received by H.E.L.C. is subject to the Gross Receipts Tax. It is not a receipt from the sale of construction services and is therefore not subject to the deduction permitted by Section 72–16A–14.7, p. 88.

The Bureau summarily concludes that the Texas contractor in the example is not liable for compensating tax on the seven pieces of equipment rented from a Dallas leasing company and used in construction of a New Mexico road. No statutory authority is cited but since the contractor is not re-leasing the equipment to another in New Mexico, it is clear that § 7–9–78 " . . . use of tangible personal property for leasing" (the section with which this case is concerned), does not provide the basis for that portion of the Bureau's interpretation.

Paragraph 6 of the Bureau's order and decision concludes that Strebeck "used the machines according to the definition of "use" found in § 72–16A–3(L) [now § 7–9–3(L), N.M.S.A. (1978)]:

L. "use" or "using" includes use, consumption or storage other than storage for subsequent sale in the ordinary course of business or for use solely outside this state.

That conclusion ignores the statutory definition of "use" as specifically expanded in the portion of the Act pertinent to Strebeck's protest. Subsection B of § 72–16A–15.1 [now § 7–9–78], grants the deduction if the one using the property for leasing "does not *use* [or consume or store] the tangible personal property *in any manner other than holding it for lease* or sale . . . ." (Our emphasis.)

The statute under which Strebeck sought its deduction, § 72–16A–15.1 [now § 7–9–78], is also interpreted by Bureau Regulation. For some reason, the Director did not refer to it in his decision and order. In its entirety, that regulation specifies:

### G.R. REGULATION 15.1:2—GENERAL EXAMPLES—

The following examples illustrate the application of Section 72–16A–15.1 in various situations:

*Example 1:* E, a New Mexico corporation, is solely engaged in the business of leasing electric typewriters to a business establishment in New Mexico. E purchases a typewriter in Texas to hold for lease in the ordinary course of its business. It does not use the typewriter in any other manner. E may deduct the value of the typewriter in computing its Compensating Tax due. Compare G.R. REGULATION 3(L):1, Example 1, p. 24.

*Example 2:* E, a Colorado company, buys stoves from A, a Colorado company. E initially uses the stoves in its business in Colorado but later converts their use solely to leasing. E then brings the stoves into New Mexico for purposes of leasing. E asks if the firm is liable for the payment of the Compensating Tax. E is not liable for the Compensating Tax if the stoves are leased to restaurants. If E brings the stoves into New Mexico to be furnished as part of a leased dwelling house of which E is the lessor, E is liable for the Compensating Tax.

The use of the property described in the last sentence of Example 2 is that which the statute expressly excludes from deduction. In contrast, the other uses of tangible properties shown by Examples 1 and 2 meet the precise conditions set forth in the statute to permit deduction.

Unless we are to accept what the Bureau's illustrations seem to indicate, i. e., that leasing situations which normally are entered into formally and in writing—lease of oil field equipment, lease of typewriters, lease of restaurant equipment—are the only kinds of transactions that will be considered leases rather than licenses, we are faced with trying to differentiate the use of Strebeck's laundromat equipment solely by others from the use of E's typewriters by business establishments in Example 1, and the restaurants' use of the Colorado company's stoves in Example 2 of G.R. Regulation 15.1:2.

The issue thus indeed boils down to the Bureau's judgment that "leasing" as

defined in the statute is sufficiently ambiguous to require interpretation by regulatory illustration to distinguish a lease from a mere license. *S.S. Kresge Co. v. Bureau of Revenue*, 87 N.M. 259, 531 P.2d 1232 (Ct. App.1975), relied on by the Bureau, defined "license" to mean "permission to act," but the court emphasized that the parties to the instrument there had declared in writing that the agreement was not intended to create, nor to be construed as creating, a lease. In *New Mexico Sheriffs and Police Ass'n v. Bureau of Revenue*, 85 N.M. 565, 514 P.2d 616 (Ct.App.1973), also cited by the Bureau, this court held that a contract granting another the exclusive right to publish, distribute and sell, and solicit advertising for the Association's official magazine, under which the Association would receive a 16% royalty from advertising receipts only, created a "license" and proceeds from the license would be subject to gross receipts tax; and it did not provide to the Association the deduction from gross receipts tax available to those receiving income from publishing newspapers or magazines. The question of "lease v. license" did not arise, and the case is not helpful on the issue now to be decided.

In *Transamerica Leasing Corp. v. Bureau of Revenue*, 80 N.M. 48, 51, 450 P.2d 934, 937 (Ct.App.1969), where the tax statutes concerned did not define "lease," Judge Wood wrote that "[g]enerally speaking, a lease is an agreement under which the owner gives up the possession and use of his property for a valuable consideration and for a definite term," at the end of which term "the owner has the absolute right to retake, control and use the property." The agreement in that case, although termed a lease, provided that the "lessee" would own the property at the end of the term of lease payments upon a final payment of $1.00. The document there was determined to be a security instrument rather than a lease, and the transaction a purchase from the manufacturer by the "lessee," financed by the "lessor."

There are no elements of eventual ownership in the users of Strebeck's equipment which might destroy the categorization of the instant arrangement as a "lease." The reported cases most frequently discuss the lease-license question in connection with real estate, typical of which are *Cutter Flying Service, Inc. v. Property Tax Dep't*, 91 N.M. 215, 572 P.2d 943 (Ct.App.1977), and *Lee v. North Dakota Park Service*, 262 N.W.2d 467 (N.D.1977).

A few cases have considered and classified the type of arrangement between the owner of coin-operated machines and a property owner who permits them to be installed in his building in consideration of a part of the gross income from the machines, to be a license, e. g., *American Coin-Meter of Colorado Springs, Inc. v. Poole*, 31 Colo.App. 316, 503 P.2d 626 (1972); *Wash-O-Matic Laundry Co. v. 621 Lefferts Ave. Corp.*, 191 Misc. 884, 82 N.Y.S.2d 572 (1948). One such case, *Bathrick Enterprises, Inc. v. Murphy*, 27 A.D.2d 215, 277 N.Y.S.2d 869 (1967), did not decide what the arrangement was, but did declare what it was not. There, the Appellate Division ruled against the Tax Commissioner and held that receipts from coin-operated music machines were not taxable to the owner of the machines under the theory that Bathrick had granted a "license to use" tangible personal property.

In all of the above cited cases, however, the arrangements were unlike the case presently before us, since they dealt with the owner's placement of his machines in business establishments of others. *State Tax Commission v. Peck*, 106 Ariz. 394, 476 P.2d 849 (1970), is more directly on point. Peck owned a laundromat in which were installed coin-operated washers and dryers. A co-appellee, Sollberger, owned a business equipped with automatic car-washing machinery. Both owners furnished utilities, including heat and water, for operating their machines, but in both businesses the customers operated the equipment and performed whatever manual activity was necessary to use the facilities. Arizona's statute imposed a transaction privilege tax on businesses engaged in renting or leasing personal property. The taxpayers in *Peck* took a position exactly opposite that taken

by the taxpayer here, urging that they performed personal services and thus were exempt from the Arizona tax. Justice Udall's analysis is particularly pertinent to the precise question to be answered here. At 476 P.2d 850–851, he wrote:

> The major dispute between the parties here concerns the meaning of the terms "leasing" or "renting" as used in [the statute]. The legislature has not defined these terms as they are used in this section, and it does not appear from the context that a special meaning was intended. We must therefore be guided by the ordinary meaning of the words. [Citing cases]
>
> . Webster's Third International Dictionary defines the verb "to rent" as "(1) to take and hold under an agreement to pay rent," or "(2) to obtain the possession and use of a place or article for rent." There is no question that when customers use the equipment on the premises of the plaintiffs herein, such customers have an exclusive use of the equipment for a fixed period of time and for payment of a fixed amount of money. It is also true that the customers themselves exclusively control all manual operations necessary to run the machines. In our view such exclusive use and control comes within the meaning of the term "renting" as used in the statute.
>
> It is plaintiff's principal contention here that because the equipment is at all times located upon the premises of the plaintiffs, and because the plaintiffs as owners supply the utilities necessary to operate the machines, that the customers do not obtain a requisite degree of control or "possession" of the equipment. We do not believe that the terms "leasing" or "renting" as used in the statute require that the property so leased or rented be physically capable of being transported from one place to another by the customer. Nor do we believe that the mere attachment of a label such as "license", borrowed from other areas of law, can be dispositive of the tax question before us.

Under the definition of "leasing" found in our statute, and following the reasoning of *State Tax Commission v. Peck*, supra, the Bureau was in error in determining that Strebeck "used" and did not "lease" property, to deny the deduction. If the regulation adopted by the Bureau creates an exception from exempt transactions which was not contemplated by the legislative act even though such administrative interpretations are entitled to great weight in ascertaining the meaning of the statute, the courts may not give legal sanction to the agency's incorrect construction of unambiguous statutory language. *Miller v. Bureau of Revenue,* 93 N.M. 252, 599 P.2d 1049 (Ct.App.1979). The statutory definition of "leasing" needs no interpretation by Bureau regulations.

The property of Strebeck is used for a consideration by persons other than the owner, and the transactions, therefore, are "leasings" as defined in § 7–9–3(J). It follows that Strebeck was entitled to the deduction allowed by § 72–16A–15.1 [now § 7–9–78].

The decision and order of the Director is reversed; the taxpayer's claimed deduction is to be allowed.

IT IS SO ORDERED.

WOOD, C. J., concurs.

ANDREWS, J., dissents.

ANDREWS, Judge (dissenting).

I dissent.

The sole issue on appeal is whether the taxpayer is entitled to a deduction in computing the compensating tax owed pursuant to § 7–9–78, N.M.S.A.1978 Comp. (§ 72–16A–15.1, N.M.S.A.1953 Comp.). This section provides in material part:

> The value of tangible personal property, . . . may be deducted in computing the compensating tax due if the person using the tangible personal property:
>
> A. is engaged in a business which derives a substantial portion of its receipts from *leasing,* . . . tangible personal property of the type leased; and

B. does not use the tangible personal property in any manner other than holding it for *lease* . . . or *leasing* . . it either by itself or in combination with other tangible personal property in the ordinary course of business. (Emphasis added.)

If the taxpayer's customers "lease" the washers and dryers, the taxpayer is entitled to the deduction. If the taxpayer's customers "use" the washing machines but the "use" does not constitute a "lease" within the meaning of the Compensating Tax Act, the taxpayer is not entitled to a deduction.

The term "leasing" is defined in the Compensating Tax Act, §. 7–9–3(J), N.M.S.A. 1978 (§ 72–16A–3(J), N.M.S.A.1953), as follows:

> . . . "leasing" means any arrangement whereby, for a consideration, property is employed for or by any person other than the owner of the property;

In my opinion, regardless of the criteria established in this definition, the definition can only be applied if the transaction in question is shown to be an "arrangement." While this term appears to be quite broad, it is subject to interpretation; and, where it affects a tax deduction, should be reasonably, but narrowly construed. *McKee, General Contractor, Inc. v. Bureau of Revenue*, 63 N.M. 185, 315 P.2d 832 (1957); *EVCO v. Jones*, 81 N.M. 724, 472 P.2d 987 (Ct.App. 1970); cert. denied 81 N.M. 772, 473 P.2d 911 (1970); vacated 402 U.S. 969, 91 S.Ct. 1655, 29 L.Ed.2d 134, on remand 83 N.M. 110, 488 P.2d 1214 (Ct.App.1971); cert. denied 83 N.M. 105, 488 P.2d 1209 (1971).

An "arrangement" is "a mutual agreement or understanding," Websters Third New International Dictionary (1976). Thus, in order to establish the existence of an "arrangement" between the taxpayer and customers using the washers and dryers, there must be a mutual agreement or understanding between the two. In this situation, taxpayer has no contact with the customers and does not even have knowledge of their identity. There is no evidence of a "mutual agreement" or "understanding." Absent such an arrangement between identifiable persons, "leasing,"

within the meaning of the Act, does not occur. Rather, the activity described herein is a "service" as defined in § 7–9–3(K), N.M.S.A.1978 (§ 72–16A–3(K), N.M.S.A. 1953 Comp.). The deduction therefore does not apply. *See Boise Bowling Center v. State*, 93 Idaho 367, 461 P.2d 262 (1969) for a helpful discussion of the nature of businesses which provide "a unique combination of goods and services."

In *Francom v. Utah State Tax Commission*, 11 Utah 2d 164, 356 P.2d 285 (1960), interpreting a sales tax law imposing a tax upon charges for "laundry service," the Court characterized this type of coin-operated laundry business as providing a "laundry service." The business was like that of taxpayer in that customers performed all the manual labor in the washing and drying of their articles, and no attendant was on duty at the premises. In spite of these facts, the Court said:

> Regardless of the fact that the actual manual operation or labor is performed by the customer, we are of the opinion that the plaintiffs are performing a "laundry service" within the meaning of the statute . . . . The mere fact that the plaintiffs have no attendant at the establishment does not mean that the plaintiffs are not performing a "service". By making available to the public the machines necessary to the washing and drying of articles, they are performing a "laundry service". 356 P.2d 285 at 286.

In his testimony at the hearing, Mr. Strebeck, president of taxpayer corporation, characterized his business as a "service" when he stated that "[w]e feel that that's providing a service for the people that cannot afford a washer and dryer at home. . . ." Tape 312. Likewise, I would find that the taxpayer's business is that of providing a "service" and therefore taxable under the Compensating Tax Act.

The decision and order of the Director should be affirmed.